**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

MR LICENSING LLC,

              Plaintiff,

    v.

SEAGATE TECHNOLOGY HOLDINGS
PLC, SEAGATE SINGAPORE
INTERNATIONAL HEADQUARTERS
PTE. LTD., SEAGATE TECHNOLOGY
INTERNATIONAL, SEAGATE
TECHNOLOGY (THAILAND)
LIMITED, and SEAGATE
TECHNOLOGY (NETHERLANDS) BV,

              Defendants.

**REDACTED**

Civil Action No. 2:25-CV-00596-JRG

JURY TRIAL DEMANDED

**DEFENDANTS' MOTION TO DISMISS AND TRANSFER**

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.   FACTUAL BACKGROUND ........................................................................................ 2

    A.    Plaintiff MR Licensing LLC ................................................................................. 2

    B.    Defendants .............................................................................................................. 4

    C.    Non-Party Seagate Technology LLC ...................................................................... 5

    D.    Party and Non-Party Witnesses in Minnesota ....................................................... 6

    E.    Relevant Documents in Minnesota ......................................................................... 6

III.  ARGUMENT ................................................................................................................. 6

    A.    The Court Should Dismiss All Claims Against Seagate Holdings, Seagate International, and Seagate Netherlands for Lack of Personal Jurisdiction ................. 6

        1.    Legal Standard for Personal Jurisdiction ................................................... 6

        2.    MRL Has Not Met Its Burden to Show Personal Jurisdiction Exists. .................... 8

            a.    MRL Has Not Shown that Seagate Holdings, Seagate International, or Seagate Netherlands Have Sufficient Contacts with Texas. ................................. 8

            b.    MRL Has Not Shown that Seagate Holdings, Seagate International, or Seagate Netherlands Have Sufficient Contacts with the United States to Confer Personal Jurisdiction Under Rule 4(k)(2). ........................ 10

    B.    The Action Should Be Transferred to the District of Minnesota ................................ 10

        1.    Legal Standard for Transfer ....................................................................... 10

        2.    This Case Could Have Been Brought in the District of Minnesota ..................... 11

        3.    The Private Interest Factors Strongly Favor Transfer ........................................... 15

            a.    The District of Minnesota is More Convenient for Witnesses ............................ 15

            b.    The District of Minnesota Has Compulsory Process Over Non-Party Witnesses, and this Court Does Not. ........................................... 18

            c.    Sources of Proof are Heavily Concentrated in the District of Minnesota, and There is No Relevant Evidence in this District ........................ 19

            d.    There are No Practical Problems with Transferring this Case ............................. 20

        4.    The Public Interest Factors Favor Transfer ................................................ 21

            a.    The District of Minnesota Has a Strong Local Interest ...................................... 21

            b.    Court Congestion Does Not Weigh Against Transfer .......................................... 22

            c.    The Remaining Public Interest Factors are Neutral ............................................ 23

    C.    In the Alternative, the Action Should Be Dismissed Under Rule 12(b)(6) ................. 23

        1.    Legal Standard for Motion to Dismiss ...................................................... 23

        2.    MRL's Direct Infringement Claims Fail .................................................... 24

███████████

      3.      MRL's Indirect Infringement Claims Fail ........................................................... 27

CONCLUSION.................................................................................................................... 28

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Acorda Therapeutics Inc. v. Mylan Pharms. Inc.*,
   817 F.3d 755 (Fed. Cir. 2016)......................................................................................6, 7

*Adaptix, Inc. v. HTC Corp.*,
   937 F. Supp. 2d 867 (E.D. Tex. 2013)..................................................................................18

*AFTG-TG, LLC v. Nuvoton Tech. Corp.*,
   689 F.3d 1358 (Fed. Cir. 2012)........................................................................................9, 10

*Ainsworth v. Moffett Eng'g, Ltd.*,
   716 F.3d 174 (5th Cir. 2013) ..............................................................................................11

*In re Amazon.com, Inc.*,
   No. 2022-157, 2022 WL 17688072 (Fed. Cir. Dec. 15, 2022)............................................15

*In re Apple Inc.*,
   2021 WL 5291804 (Fed. Cir. 2021)........................................................................18, 20, 21

*In re Apple Inc.*,
   2022 WL 1196768 (Fed. Cir. 2022)....................................................................................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................23, 24, 26

*Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*,
   2015 WL 123852 (E.D. Tex. Jan. 7, 2015)..........................................................................20

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
   566 F.3d 1012 (Fed. Cir. 2009)............................................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................................23, 25, 26

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
   21 F.3d 1558 (Fed. Cir. 1994)............................................................................................11

*Blue Spike, LLC v. Huawei Techs. Co.*,
   No. 6:13-cv-679-RWS, 2016 WL 3951665 (E.D. Tex. June 6, 2016) ............................7, 8, 9

*Canon, Inc. v. TCL Elecs. Holdings Ltd.*,
   2020 WL 1478356 (E.D. Tex. Mar. 25, 2020) ..............................................................26, 27

*Celgard, LLC v. SK Innovation Co.*,
   792 F.3d 1373 (Fed. Cir. 2015)........................................................................................7, 9

*In re Clarke*,
94 F.4th 502 (5th Cir. 2024) ........................................................................ 22-23

*Connelly v. Lane Constr. Corp.*,
809 F.3d 780 (3d Cir. 2016).......................................................................... 14, 25

*Continental Grain Co. v. THE Barge FBL-585*,
364 U.S. 19 (1960)......................................................................................... 12, 13

*Daedalus Prime LLC v. MediaTek, Inc.*,
2025 WL 825188 (E.D. Tex. Mar. 13, 2025) ............................................... 25

*In re DISH Network L.L.C.*,
2021 WL 4911981 (Fed. Cir. 2021)............................................................... 21

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
363 F.3d 1263 (Fed. Cir. 2004)..................................................................... 27

*Encyclopaedia Britannica, Inc. v. Magellan Navigation, Inc.*,
512 F. Supp. 2d 1169 (W.D. Wis. 2007) ...................................................... 13, 14

*Fellowship Filtering Techs., LLC v. Alibaba.com, Inc.*,
2016 WL 6917272 (E.D. Tex. Sept. 1, 2016) ............................................... 7, 9

*Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*,
867 F. Supp. 2d 859 (E.D. Tex. 2012)........................................................... 15

*Gemtron Corp. v. Saint-Gobain Corp.*,
572 F.3d 1371 (Fed. Cir. 2009)..................................................................... 25

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009)..................................................................... 15, 18, 19, 22

*In re Google LLC*,
2021 WL 4427899 (Fed. Cir. 2021)............................................................... 15, 16

*In re Google LLC*,
2022 WL 1613192 (Fed. Cir. 2022)............................................................... 17, 21

*In re Google LLC*,
58 F.4th 1379 (Fed. Cir. 2023) ..................................................................... 19, 22, 23

*In re Hoffmann-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009)..................................................................... 12, 13, 17, 21

*Honeywell Int'l Inc. v. Acer Am. Corp*,
655 F. Supp. 2d 650 (E.D. Tex. 2009)........................................................... 24, 28

*In re Hulu, LLC*,
    2021 WL 3278194 (Fed. Cir. 2021)................................................................................18

*Inamed Corp. v. Kuzmak*,
    249 F.3d 1356 (Fed. Cir. 2001)......................................................................................7

*InMotion Imagery Techs. v. Brain Damage Films*,
    2012 WL 3283371 (E.D. Tex. Aug. 10, 2012) ...............................................................28

*Jawbone Innovations, LLC v. Amazon*,
    2:21-CV-00435-JRG, Dkt. 60 (E.D. Tex. Sept. 21, 2022) ...........................................22

*Jawbone Innovations, LLC v. Samsung Elecs. Co.*,
    2022 WL 4004195 (E.D. Tex. Aug. 31, 2022) ...............................................................16

*In re Juniper Networks, Inc.*,
    14 F.4th 1313 (Fed. Cir. 2021) ......................................................................................19

*Litecubes, LLC v. N. Light Prods.*,
    523 F.3d 1353 (Fed. Cir. 2008).................................................................................24, 26

*Lucas v. Chesapeake Expl., L.L.C.*,
    2013 WL 5200046 (E.D. Tex. Sept. 16, 2013) ..............................................................26

*Lucas v. Chesapeake Exploration*,
    Case No. 2:12-cv-592-JRG, Dkt. 1 (E.D. Tex. Sept. 7, 2012)......................................27

*In re Microsoft Corp.*,
    630 F.3d 1361 (Fed. Cir. 2011)................................................................................17, 22

*Microsoft Corp. v. AT & T Corp.*,
    550 U.S. 437 (2007)..................................................................................................24, 25

*In re Morgan Stanley*,
    417 F. App'x 947 (Fed. Cir. 2011) ................................................................................22

*In re Netflix, Inc.*,
    2022 WL 167470 (Fed. Cir. 2022)..................................................................................19

*In re: NetScout Sys., Inc.*,
    2021 WL 4771756 (Fed. Cir. 2021)................................................................................20

*In re Nintendo Co., Ltd.*,
    589 F.3d 1194 (Fed. Cir. 2009).................................................................................10, 11

*In re Nintendo of Am., Inc.*,
    756 F.3d 1363 (Fed. Cir. 2014)......................................................................................15

*Oplus Techs., Ltd. v. Sears Holding Corp.*,
No. 11-9029, 2012 WL 2400478 (N.D. Ill. June 21, 2012)...................................................15

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
843 F.3d 1315 (Fed. Cir. 2016)...................................................................................................24

*Princeton Digital Image Corp. v. Facebook, Inc.*,
2012 WL 3647182 (E.D. Tex. Aug. 23, 2012) ............................................................8, 9, 10

*Promos Techs., Inc. v. Samsung Elecs. Co. Ltd.*,
2018 WL 5630585 (D. Del. Oct. 31, 2018) ............................................................................26

*In re Samsung Elecs. Co., Ltd.*,
2 F.4th 1371 (Fed. Cir. 2021) ....................................................................................................21

*Select Rsch., Ltd. v. Amazon.com, Inc.*,
2024 WL 3585106 (E.D. Tex. July 30, 2024) ...............................................................7, 8, 9

*SQIP, LLC v. Cambria Co.*,
LLC, 728 F. Supp. 3d 447 (E.D. Tex. 2024) ........................................................................20

*In re Toyota Motor Corp.*,
747 F.3d 1338 (Fed. Cir. 2014).........................................................................................11, 20

*In re TS Tech USA Corp.*,
551 F.3d 1315 (Fed. Cir. 2008)......................................................................................... *passim*

*Vigilos, LLC v. Sling Media, Inc.*,
2011 WL 13156923 (E.D. Tex. July 25, 2011) ....................................................................22

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004) ...............................................................................10, 11, 15, 21

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ..............................................................................................18, 19

*Wesley v. Neal*,
2024 WL 911720 (E.D. Tex. Mar. 4, 2024) .................................................................23, 24

*Westech Aerosol Corp. v. 3M Co.*,
927 F.3d 1378 (Fed. Cir. 2019).........................................................................................14, 25

*Wild v. Subscription Plus, Inc.*,
292 F.3d 526 (7th Cir. 2002) .....................................................................................................13

*Zaklit v. Glob. Linguist Sols., LLC*,
2014 WL 12521725 (C.D. Cal. Mar. 24, 20124) ................................................................13

*In re Zimmer Holdings, Inc.,*
    609 F.3d 1378 (Fed. Cir. 2010)....................................................................................17, 18

**Statutes, Rules & Regulations**

28 U.S.C. § 1391(c)(3)..................................................................................................1

28 U.S.C. § 1400(b) .....................................................................................................1

28 U.S.C. § 1404(a) .................................................................................1, 11, 13, 16

35 U.S.C. § 271 .....................................................................................................25, 28

35 U.S.C. § 271(a) .....................................................................................................24

35 U.S.C. § 271(c) .................................................................................................24, 28

Fed. R. Civ. P. 4(k)(2)..........................................................................................7, 8, 10

Rule 12(b)(6) ..................................................................................................... *passim*

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
|---|---|
| A | Texas Comptroller Franchise Tax Account Status record for MR Licensing LLC; accessed from https://comptroller.texas.gov/taxes/franchise/account-status/search/32097950714 |
| B | State of California Secretary of State, Statement of Information for Spansion LLC |
| C | State of California Secretary of State, Statement of Information for Cypress Semiconductor Corporation |
| D | State of California Secretary of State, Statement of Information for Monterey Research, LLC |
| E | U.S. Patent No. 10,204,041, entitled "Relocating Data in a Memory Device" |
| F | U.S. Patent No. 7,979,658, entitled "Secure Management of Memory Regions in a Memory" |
| G | U.S. Patent No. 8,239,611, entitled "Relocating Data in a Memory Device" |
| H | U.S. Patent No. 8,694,776, entitled "Authenticated Memory and Controller Slave" |
| I | U.S. Patent No. 9,734,049, entitled "Relocating Data in a Memory Device" |
| J | U.S. Patent No. 9,767,303, entitled "Authenticated Memory and Controller Slave" |
| K | U.S. Patent No. 11,093,383, entitled "Relocating Data in a Memory Device" |
| L | U.S. Patent No. 11,609,847, entitled "Relocating Data in a Memory Device" |
| M | Form 10-Q for Quest Patent Research Corporation, filed May 15, 2025 |
| N | Form 8-K for Quest Patent Research Corporation, filed April 23, 2025 |
| O | Post Effective Amendment No. 6 to Form S-1 for Quest Patent Research Corporation, filed May 8, 2025 |
| P | USPTO search results for "MR Licensing LLC;" accessed from https://assignment.uspto.gov/patent/index.html#/patent/search/result?id=mr%20licensing%20llc&type=patAssigneeName |

| | |
|---|---|
| Q | LinkedIn profile page of Walter Allen |
| R | LinkedIn profile page of Robert France |
| S | LinkedIn profile page of Christophe Carvounas |
| T | LinkedIn profile page of Joël LeBihan |
| U | LinkedIn profile page of Willy Obereiner |
| V | LinkedIn profile page of Hendrik Graulus |
| W | Webpage https://www.seagate.com/products/ |
| X | ICANN Lookup search results for www.seagate.com and its subpages; accessed from https://lookup.icann.org/en/lookup |
| Y | LinkedIn profile page of Timothy Scahill |
| Z | LinkedIn profile page of Jon Scahill |
| AA | Google Maps search showing the distance between New York and Minneapolis, Minnesota |
| BB | Google Maps search showing the distance from New York to the nearest airport to Marshall, Texas: Shreveport Regional Airport |
| CC | Google Flights search result for non-stop flights from New York to the Minneapolis-St. Paul airport |
| DD | Google Maps search showing the distance between the Minneapolis-St. Paul airport and the Federal Courthouse, located in Minneapolis |
| EE | Search for Best Buy stores in Minnesota using the Best Buy Store Locator; accessed from https://www.bestbuy.com/site/store-locator |
| FF | Best Buy product search result for Seagate FireCuda 530R 2TB Internal SSD; accessed from https://www.bestbuy.com/product/seagate-firecuda-530r-2tb-internal-ssd-pcie-gen-4-x4-nvme-with-heatsink-for-ps5/J37C5H5TVZ |

## TABLE OF ABBREVIATIONS

| Abbreviation | Definition |
|---|---|
| "Defendants" | Collectively Defendants Seagate Technology Holdings plc, Seagate Singapore International Headquarters Pte. Ltd., Seagate Technology International, Seagate Technology (Thailand) Limited, and Seagate Technology (Netherlands) B.V. |
| "Seagate Holdings" | Defendant Seagate Technology Holdings plc |
| "Seagate Singapore" | Defendant Seagate Singapore International Headquarters Pte. Ltd. |
| "Seagate International" | Defendant Seagate Technology International |
| "Seagate Thailand" | Defendant Seagate Technology (Thailand) Limited |
| "Seagate Netherlands" | Defendant Seagate Technology (Netherlands) B.V. |
| "MRL" | Plaintiff MR Licensing LLC |
| "STL" | Seagate Technology LLC |
| "Quest" | Quest Patent Research Corporation |
| "Monterey Research" | Monterey Research, LLC |
| "Spansion" | Spansion LLC |
| "Cypress" | Cypress Semiconductor Corporation |
| "HDD" | Hard-Disk Drive |
| "SSD" | Solid-State Drive |
| "Shay Decl." | Declaration of Patrick Shay ISO Defendants' Motion to Dismiss and Transfer |
| "Feist Decl." | Declaration of Jason Feist ISO Defendants' Motion to Dismiss and Transfer |

Defendants respectfully move to dismiss claims filed by MRL against Seagate Holdings, Seagate International, and Seagate Netherlands for lack of personal jurisdiction and to transfer this action to the District of Minnesota under 28 U.S.C. § 1404(a). Alternatively, Defendants respectfully move to dismiss the claims for failure to state a claim under Rule 12(b)(6).

## I.    INTRODUCTION

STL, which is located in the United States, is the only Seagate entity responsible for the research, development, testing, importation, and sale of the accused products in the United States. MRL knew that STL could not be sued in this District under 28 U.S.C. § 1400(b)—because it neither resides nor has a regular and established place of business here. So, instead of suing STL— the party that researches, designs, and sells the accused products in the United States—MRL filed this patent infringement lawsuit in this District, named five foreign Seagate entities as defendants, and *intentionally omitted* STL as a defendant. This was an obvious attempt to manufacture venue in this District under 28 U.S.C. § 1391(c)(3), which permits foreign entities to "be sued in any judicial district."

This strategy cannot work here. As a threshold issue, all claims against Seagate Holdings, Seagate International, and Seagate Netherlands must be dismissed because MRL has failed to plead facts sufficient to confer personal jurisdiction over those foreign entities.

Additionally, evidence overwhelmingly supports transfer of this case to the District of Minnesota under 28 U.S.C. § 1404(a). While STL is not named as a defendant, the fact remains that STL is the Seagate entity that is responsible for research and development of the accused products and for importation, sales, and distribution of the accused products in the United States. These activities by STL occur *in Minnesota*, and thus STL witnesses with relevant knowledge reside *in Minnesota* and relevant evidence is stored *in Minnesota*. In contrast, this District has no connection to this case. None of the Defendants have any employees or offices in the United States.

No accused products are developed or manufactured in this District. None of the named inventors are located in this District. MRL itself lacks any meaningful connection to this District. As a non-practicing entity, MRL was recently formed under Texas law as a superficial litigation construct for venue purposes—a strategy that this District has previously rejected. This case should be transferred to the District of Minnesota.

In the alternative, if the Court finds that jurisdiction is proper and declines to transfer venue, Defendants request dismissal under Rule 12(b)(6). This Court has previously dismissed bare-bones pleadings that rely on conclusory statements and paraphrased statutory language, rather than factual allegations. That is exactly the case here. MRL failed to plead plausible claims for direct, induced, or contributory infringement, and the Complaint should be dismissed in its entirety.

## II.    FACTUAL BACKGROUND

This is a patent case involving data storage devices, specifically HDDs and SSDs. (Dkt. 1, ¶¶ 12-19.) MRL accuses HDD and SSD products of infringement, including the BarraCuda, FireCuda, Nytro, and Exos products. (*Id.*, ¶ 22.)

### A.  Plaintiff MR Licensing LLC

MRL is a non-practicing entity founded in December 2024, less than one year ago. (Ex. A.) MRL is registered in Texas and purports to have a principal place of business in Marshall, Texas, but it does not identify any employees or documents there. (Dkt. 1, ¶ 1.) MRL does not claim to manufacture or sell any products. (*Id.*)

According to the Complaint, the technology of the asserted patents was originally developed by Spansion, which merged with Cypress in 2015. (Dkt. 1, ¶ 2.) Both Spansion and Cypress are companies that were organized in Delaware and headquartered in California. (Ex. B; Ex. C.) At some point, the asserted patents were sold to Monterey Research, which is named as

the assignee on the asserted patents, and which is also organized in Delaware and headquartered in California. (Ex. D; *see* Exs. E-L.)

MRL is a "wholly-owned subsidiary" of Quest, a Delaware corporation with a principal place of business in New York. (Ex. M at Cover Page, 17.) Together, Quest and MRL are "in the business of . . . acquiring and monetizing patents." (Ex. N at 7.) According to public filings, it appears the only two managers of MRL are Jon Scahill and Timothy Scahill, both of whom are executives at Quest (President/CEO and CTO, respectively). (Ex. O at 42-43.) Shortly before this lawsuit was filed, Quest secured $9 million in financing to coordinate the acquisition by MRL of over 2,500 patent assets from Monterey Research, including presumably the patents asserted here. (Ex. M at 18.) Those patent assets appear to have been transferred to MRL for the purpose of asserting them in this District and attempting to support venue here. (*Id.*; Ex. N at 51.)[1]

The five asserted patents together name six inventors who previously worked for Spansion: Walter Allen, Robert France, Christophe Carvounas, Joël LeBihan, Willy Obereiner, and Hendrik Graulus. (Exs. E-L.) Mr. Allen appears to reside in Longmont, Colorado. (Ex. Q.) Mr. France appears to reside in Saratoga, California. (Ex. R.) Messrs. Carvounas and LeBihan both appear to reside in France. (Exs. S, T.) Mr. Obereiner appears to reside in San Jose, California. (Ex. U.) And Mr. Graulus appears to reside in Los Gatos, California. (Ex. V.) No inventors appear to reside in Texas.

---

[1] There are no assignments recorded at the USPTO or attached to the Complaint to show the asserted patents were actually transferred and are owned by MRL. (*See, e.g.*, Ex. P (showing no assignments recorded to MRL).) This is despite reference to a "Patent Assignment Agreement" between MRL and Monterey Research in Quest's SEC filings. (Ex. N at 51.) Thus, it is not clear whether MRL has sufficient standing to bring this suit at all.

■■■■■■

### B.  Defendants

The Defendants are all foreign entities. (Shay Decl., ¶¶ 4-8; Dkt. 1, ¶¶ 3-7.) None of the Defendants are registered in the United States. (Shay Decl., ¶¶ 4-8; Dkt. 1, ¶¶ 3-7.) None of the Defendants have a place of business in the United States. (Shay Decl., ¶¶ 4-8; Dkt. 1, ¶¶ 3-7.) None of the Defendants have any officers or employees in the United States; own or lease any offices, manufacturing facilities, storage facilities, or other property in the United States; nor do they design, develop, or manufacture any products in the United States. (Shay Decl., ¶¶ 4-8.)

*Seagate Thailand* is a Thai corporation with its principal place of business in Thailand. (Shay Decl., ¶ 6; Dkt. 1, ¶ 6.) Seagate Thailand does not have a place of business in the United States and does not design, develop, manufacture, import, market, offer for sale, or sell any products in the United States. (Shay Decl., ¶ 6.) Seagate Thailand manufactures finished products, such as HDDs, in Thailand. (*Id.*) Seagate Thailand is also responsible for the distribution of finished products to Seagate Singapore. (*Id.*)

*Seagate Singapore* is a Singaporean corporation with its principal place of business in Singapore. (Shay Decl., ¶ 7; Dkt. 1, ¶ 4.) Seagate Singapore does not have a place of business in the United States and does not design, develop, manufacture, import, market, offer for sale, or sell any products in the United States. (Shay Decl., ¶ 7.) Seagate Singapore is responsible for the distribution and sale of products for customers in Asia. (*Id.*) ■■■■■■

■■■■■■■■■■

■■■■■■■■■■

■■■■■■■■■■

■■■■■■■■■■

■■■■■■■■■■

■■■■■■

*Seagate Holdings* is a holding company. (*Id.*, ¶ 4.) Seagate Holdings is organized under the laws of Ireland and is the parent entity under which all other Seagate entities are organized. (Shay Decl., ¶ 4; Dkt. 1, ¶ 3.) Seagate Holdings does not have employees or any place of business in the United States and does not make, sell, offer for sale, or import any products into the United States. (Shay Decl., ¶ 4.)

*Seagate International* is a company organized in the Cayman Islands with its principal place of business in the Cayman Islands. (Shay Decl., ¶ 5; Dkt. 1, ¶ 5.) Seagate International does not have employees or any place of business in the United States and does not make, sell, offer for sale, or import any products into the United States. (Shay Decl., ¶ 5.)

*Seagate Netherlands* is a Dutch corporation with its principal place of business in the Netherlands. (Shay Decl., ¶ 8; Dkt. 1, ¶ 7.) Seagate Netherlands does not have employees or any place of business in the United States and does not make, sell, offer for sale, or import any products into the United States. (Shay Decl., ¶ 8.) Seagate Netherlands is responsible for the distribution and sale of products for customers in Europe, Africa, and the Middle East. (*Id.*)

### C. Non-Party Seagate Technology LLC

Non-party STL is a United States company organized under the laws of Delaware, with multiple places of business in Minnesota as well as California and Colorado. (Shay Decl., ¶ 11; Feist Decl., ¶¶ 3, 19.) STL's engineers work on the design and development of the accused HDDs and SSDs at its facility located at 1280 Disc Drive, Shakopee, MN 55379. (Feist Decl., ¶¶ 3-10.) Approximately 350 employees work in the Shakopee facility, including approximately 200 engineers assigned to develop HDDs or SSDs. (*Id.*, ¶ 4.) STL also has a facility in Bloomington, Minnesota focused on developing and manufacturing components used in HDDs. (*Id.*, ¶ 19.)

STL has never designed, developed, or manufactured the accused products or any of their components in Texas. (Shay Decl., ¶ 13; Feist Decl., ¶ 24.)

### D.  Party and Non-Party Witnesses in Minnesota

STL's current and former employees in Minnesota were involved in the design, development, and marketing of the HDD and SSD products accused of infringement in this case. (Feist Decl., ¶¶ 6-18.) For example, David Kaiser, Kris Conklin, and Jon Trantham are current STL engineers with knowledge of the design and development of the accused products; and Jason Zimmerman, Matt Totin, and Adam Less are current STL employees who have worked on sales and/or marketing of the accused products. (*Id*., ¶¶ 8-10, 12-14.) All of these STL employees with relevant knowledge of the accused products work and reside in Minnesota. (*Id*.)

In addition, former employees of STL who still live in Minnesota have relevant knowledge of the design and development of the accused products, including Ryan Goss, Reid Welch, Todd Welch, and Graham Ferris. (*Id*., ¶¶ 15-18.)

### E.  Relevant Documents in Minnesota

STL keeps evidence relating to the design and development of the accused products in Minnesota, the primary location where the products were researched and developed by STL. (*Id*., ¶¶ 20-21.) This evidence includes research and design documents, testing documents, manufacturing records, and physical prototypes of components relating to the accused products. (*Id*.)

## III.    ARGUMENT

### A. The Court Should Dismiss All Claims Against Seagate Holdings, Seagate International, and Seagate Netherlands for Lack of Personal Jurisdiction

#### 1.  Legal Standard for Personal Jurisdiction

The question of personal jurisdiction is governed by Federal Circuit law in patent cases. *Acorda Therapeutics Inc. v. Mylan Pharms. Inc.*, 817 F.3d 755, 759 (Fed. Cir. 2016). "[T]he personal jurisdiction analysis for a federal court in Texas collapses into one inquiry: whether the

court's exercise of personal jurisdiction over a non-resident defendant comports with the Due Process Clause of the Fourteenth Amendment." *Fellowship Filtering Techs., LLC v. Alibaba.com, Inc.*, 2016 WL 6917272, at *1 (E.D. Tex. Sept. 1, 2016) (citing *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)).

In determining whether the due process requirement for specific personal jurisdiction is met, the Federal Circuit considers "(1) whether the defendant purposefully directed its activities at residents of the forum state, (2) whether the claim arises out of or relates to the defendant's activities with the forum state, and (3) whether assertion of personal jurisdiction is reasonable and fair." *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015). The plaintiff bears the burden of establishing the first two elements and, if the plaintiff meets that burden, the burden shifts to the defendant for the third element. *Id.* at 1378.

Under Federal Rule of Civil Procedure 4(k)(2), a district court can "exercise personal jurisdiction over a foreign defendant whose contacts with the United States as a whole, but not within the forum state, satisfy due process." *Blue Spike, LLC v. Huawei Techs. Co.*, No. 6:13-cv-679-RWS, 2016 WL 3951665, at *3 (E.D. Tex. June 6, 2016). Rule 4(k)(2) applies if "(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *Id.*

In the absence of jurisdictional discovery, a plaintiff needs to make a prima facie showing that personal jurisdiction exists over each named defendant. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009). But "[i]n assessing personal jurisdiction, this Court is ***not*** required to credit conclusory allegations, even if uncontroverted." *Princeton Digital Image Corp. v. Facebook, Inc.*, 2012 WL 3647182, at *2 (E.D. Tex. Aug. 23, 2012); *see also Select*

*Rsch., Ltd. v. Amazon.com, Inc.*, 2024 WL 3585106, at *4 (E.D. Tex. July 30, 2024) (holding that the plaintiff failed to establish a prima facie case for personal jurisdiction where it "fail[ed] to assert any plausible, non-conclusory allegations against [d]efendants supporting a connection with Texas").

### 2.  MRL Has Not Met Its Burden to Show Personal Jurisdiction Exists.

Plaintiff has failed to meet its burden of showing that this Court has personal jurisdiction over Seagate Holdings, Seagate International, or Seagate Netherlands.[2] MRL's conclusory allegations do not show sufficient minimum contacts between these Defendants and either Texas specifically or the United States in general to support a claim for personal jurisdiction.[3]

### a.  MRL Has Not Shown that Seagate Holdings, Seagate International, or Seagate Netherlands Have Sufficient Contacts with Texas.

MRL has failed to show that Seagate Holdings, Seagate International, or Seagate Netherlands have any—let alone sufficient—contacts with Texas to support a finding of personal jurisdiction. MRL's Complaint relies on conclusory statements mimicking the legal standards for personal jurisdiction and infringement. (*See, e.g.*, Dkt. 1, ¶¶ 9, 33-35, 47, 54-56, 63-64, 71-73, 77-78, 85-87, 90-91, 98-100, 107-108, 115-117, 123-124, 131-133, 139-140, 146-148, 154-155.) Such conclusory allegations must be disregarded. *See Princeton Digital* 2012 WL 3647182, at *2; *see also Select Rsch.,* 2024 WL 3585106, at *4 (holding that plaintiff failed to establish prima facie case for personal jurisdiction where it "fail[ed] to assert any plausible, non-conclusory allegations against [d]efendants supporting a connection with Texas").

---

[2] For purposes of this case, and based on its understanding of the claims at issue, Seagate Singapore and Seagate Thailand are not challenging personal jurisdiction in this motion.

[3] The Complaint does not allege that this Court has general personal jurisdiction. (Dkt. 1, ¶¶ 8-11.)

MRL's only factual allegation regarding any connection with Texas is the general statement that "Defendants directly place their products into the stream of commerce in the Eastern District of Texas by allowing customers to purchase the products *from their website*." (Dkt. 1, ¶ 10.) That is all. This single sentence is conclusory, factually incorrect, and legally insufficient. The "website" to which MRL cites (https://www.seagate.com/products/) is owned and operated by non-party STL (Feist Decl., ¶ 22)—a fact that is apparent from the face of the cited website. (Ex. W (referencing "Seagate Technology LLC" and no other entity).) STL is the only registrant to the www.seagate.com domain and its subpages, including https://www.seagate.com/products/. (Ex. X.) The Complaint does not allege any relationship between STL or any Defendant, let alone facts to show that the cited non-party website can be considered for the purpose of evaluating personal jurisdiction over any Defendant, much less all five Defendants. *Fellowship Filtering*, 2016 WL 6917272, at *4 (requiring allegations to show "more than a typical parent-subsidiary corporate relationship" in order to "demonstrate that the corporate form should be disregarded for purposes of personal jurisdiction").

Further, the fact that products "can be purchased on the internet does not alone confer jurisdiction over [a defendant] under a stream-of-commerce theory." *Blue Spike*, 2016 WL 3951665, at *2. Thus, even if MRL's allegations were factually correct (they are not), they are insufficient to confer personal jurisdiction.

Notably, MRL provides no other factual allegations regarding the stream of commerce. (Dkt. 1, ¶¶ 8-11 (no factual allegations).) This is fatal to MRL's claim of personal jurisdiction under a stream-of-commerce theory. *See Celgard*, 792 F.3d at 1382. "The paltry allegations in the complaint cannot support the exercise of personal jurisdiction" in Texas. *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1365 (Fed. Cir. 2012). Just as other courts in this District

have found, where "[t]here is no evidence in the record to support a plausible claim that [the defendant] uses (and allegedly infringes) the technology at issue in Texas," then that defendant "is not subject to either general or specific jurisdiction in this Court." *Princeton Digital*, 2012 WL 3647182, at \*2. That is true here. Seagate Holdings, Seagate International, and Seagate Netherlands should be dismissed for lack of personal jurisdiction.

### b. MRL Has Not Shown that Seagate Holdings, Seagate International, or Seagate Netherlands Have Sufficient Contacts with the United States to Confer Personal Jurisdiction Under Rule 4(k)(2).

Notably, MRL does not allege personal jurisdiction under Rule 4(k)(2). In any event, for the same reasons discussed above with respect to Texas, MRL has not shown that Seagate Holdings, Seagate International, or Seagate Netherlands have sufficient contacts with the United States as a whole to confer personal jurisdiction.

\*     \*     \*

Because MRL has failed to meet its burden of establishing personal jurisdiction over Seagate Holdings, Seagate International, and Seagate Netherlands, the claims against those Defendants should be dismissed. The next step is to consider transfer of venue.

### B. The Action Should Be Transferred to the District of Minnesota

#### 1. Legal Standard for Transfer

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The initial inquiry is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").

Once this threshold is met, courts analyze private and public interest factors. *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). The private factors include: (1) the relative ease

of access to sources of proof; (2) the availability of compulsory process to secure the attendance

of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems

that make a trial easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203. The public

factors include: (1) the administrative difficulties flowing from court congestion; (2) the local

interest in having localized interests decided at home; (3) the familiarity of the forum with the law

that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of law. *Id.*

The proposed transferee forum is "clearly more convenient" when most potential witnesses and

relevant evidence are concentrated there. *Nintendo*, 589 F.3d at 1198. Where several factors favor

transfer, but no factor weighs against it, the transferee forum is "*clearly* more convenient" and

transfer is warranted. *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014).

### 2.   This Case Could Have Been Brought in the District of Minnesota

The threshold inquiry is satisfied here because the District of Minnesota "would have been

a district in which the claim could have been filed." *Volkswagen I*, 371 F.3d at 203.



*Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013); *Beverly Hills Fan Co.*

*v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994).

Thus, this patent case could have been filed against

Seagate Thailand and Seagate Singapore in the District of Minnesota.[4]

Regarding Seagate Holdings, Seagate International, and Seagate Netherlands, the threshold inquiry for transfer is satisfied regardless of how the Court rules on Defendants' motion to dismiss for lack of personal jurisdiction. If the Court *grants* Defendants' motion to dismiss for lack of personal jurisdiction, then Seagate Holdings, Seagate International, and Seagate Netherlands are no longer Defendants and need not be considered for the purpose of this transfer motion. If the Court *denies* Defendants' motion to dismiss for lack of personal jurisdiction and finds the facts establish personal jurisdiction in the Eastern District of Texas, that means personal jurisdiction would exist in the District of Minnesota as well because those same facts would exist in Minnesota. As discussed above, MRL's only factual allegation to support personal jurisdiction is a reference to a website owned and operated by non-party STL. (Dkt. 1, ¶ 10; Feist Decl., ¶ 22.) That website is available in Minnesota as much as Texas. (Feist Decl., ¶ 23.) Thus, if the Court finds that reference to the non-party website was sufficient to confer personal jurisdiction over Seagate Holdings, Seagate International, and Seagate Netherlands in this District, that finding necessarily means that the same is true for the District of Minnesota.

In any event, any personal jurisdiction issues regarding Seagate Holdings, Seagate International, and Seagate Netherlands in Minnesota should not preclude transfer. Numerous courts have recognized that transfer under 28 U.S.C. § 1404(a) is not defeated simply by naming peripheral or sham defendants, such as MRL's "attempts to manipulate venue" here by naming only foreign Defendants. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1337 (Fed. Cir. 2009). In *Continental Grain*, the Supreme Court held that refusing to transfer a case under § 1404(a) where

---

[4] Seagate Thailand and Seagate Singapore will not challenge personal jurisdiction in the District of Minnesota in this case.

the plaintiff had named a defendant to insulate the case from transfer was contrary to the purpose of the venue statute. *Continental Grain Co. v. THE Barge FBL-585*, 364 U.S. 19, 23 (1960). Courts have therefore held that "there is no absolute bar to the transfer of a multidefendant suit to a district in which one of the defendants cannot be served." *Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 531 (7th Cir. 2002). Courts are concerned that allowing peripheral or sham defendants to defeat a motion to transfer will allow for forum-shopping by plaintiffs. *Zaklit v. Glob. Linguist Sols., LLC*, 2014 WL 12521725, at *12-14 (C.D. Cal. Mar. 24, 20124) (transferring despite lack of personal jurisdiction and venue as to a "fraudulently joined" defendant). Thus, "[s]ection 1404(a) should be construed to prevent parties who are opposed to a change of venue from defeating a transfer which, but for their own deliberate acts or omissions, would be proper, convenient and just. A plaintiff's attempts to manipulate venue in anticipation of litigation or a motion to transfer falls squarely within these prohibited activities." *Hoffmann-La Roche*, 587 F.3d at 1337 (citation omitted).

Courts in patent infringement actions use this same approach to ensure that plaintiffs cannot "escape from the purview of the transfer statute" by including a defendant "who was of no importance to the actual outcome of the case." *Encyclopaedia Britannica, Inc. v. Magellan Navigation, Inc.*, 512 F. Supp. 2d 1169, 1175 (W.D. Wis. 2007). In *Encyclopaedia Brittanica*, for example, the court found that for a retailer of the allegedly infringing product, "its peripheral and insignificant role in this case makes it at most the shadow of a real party," because it was absent from the development and manufacturing of the allegedly infringing product. *Id.* at 1174. The court granted a motion to transfer despite lack of personal jurisdiction in the transferee district, because it found that the retailer "was included as a defendant solely as an attempt to insulate th[e] case from transfer." *Id.*

Here, the inclusion of Seagate Holdings, Seagate International, and Seagate Netherlands in

this case is more "peripheral and insignificant" than the retailer in the *Encyclopaedia Brittanica* case. Seagate Holdings is a holding company, and Seagate International and Seagate Netherlands operate only outside of the United States. MRL either included these entities in an attempt to prevent transfer or because MRL did not know what these entities did and did not do. Tellingly, with respect to these entities, the Complaint includes only the bare-bones statement that "Defendants" infringe "by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the [] Patent." (Dkt. 1, ¶ 34; *see also* ¶¶ 55, 72, 86, 99, 116, 132, 147.) But simply "parrot[ing] the language" of the statute, "without more, amounts to a mere legal conclusion that the court is not bound to accept as true." *Westech Aerosol Corp. v. 3M Co.*, 927 F.3d 1378, 1382 (Fed. Cir. 2019); *accord Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016) (explaining that allegations that "paraphrase in one way or another the pertinent statutory language or elements of the claims in question" are "disentitled to any presumption of truth"). MRL pleads no factual basis for this statement, and it is plainly incorrect. If not dismissed, Seagate Holdings, Seagate International, and Seagate Netherlands will operate as a "shadow party" in this case, without witnesses or documents, because they do not design, develop, manufacture, import, market, offer for sale, or sell any of the accused products in the United States. Thus, the inclusion of these entities should not prevent transfer of the entire case to the District of Minnesota, regardless of the Court's ruling on personal jurisdiction.

If the Court declines to dismiss these three Defendants and will not transfer the case in its entirety due to these Defendants, Seagate requests that the Court sever and stay the case against Seagate Holdings, Seagate International, and Seagate Netherlands in this District, while transferring the case against Seagate Singapore and Seagate Thailand to the District of Minnesota,

the true locus of activity. *See In re Amazon.com, Inc.*, No. 2022-157, 2022 WL 17688072, at *2 (Fed. Cir. Dec. 15, 2022); *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1364 (Fed. Cir. 2014). Resolution of the claims against Seagate Singapore and Seagate Thailand will resolve all of the substantive issues regarding patent infringement for all accused products. *See Oplus Techs., Ltd. v. Sears Holding Corp.*, No. 11-9029, 2012 WL 2400478, at *4 (N.D. Ill. June 21, 2012). The Complaint makes this clear because it lumps all Defendants together for every claim. (*See, e.g.*, Dkt. 1, ¶¶ 33, 54, 71, 85, 98, 115, 131, 146.) In other words, the accused products and the alleged infringement are the same for all Defendants according to the Complaint.

    As detailed below, the private and public convenience factors overwhelmingly support transfer to Minnesota.

### 3.    The Private Interest Factors Strongly Favor Transfer

#### a.    The District of Minnesota is More Convenient for Witnesses

    "The convenience of the witnesses is probably the single most important factor in transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google LLC*, 2021 WL 4427899, at *4 (Fed. Cir. 2021). Under the Fifth Circuit's 100-mile rule, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204-05; *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (disregard of 100-mile rule was clear error). Further, the convenience of non-party witnesses "is more important and accorded greater weight in a transfer of venue analysis." *Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 870-71 (E.D. Tex. 2012).

*Non-Party Witnesses:* This case involves numerous non-party witnesses from STL. As explained above, non-party STL is responsible for research, development, importation, and sales of the accused products in this case. (Shay Decl., ¶ 12.) For this reason, there are many non-party witnesses from STL that work and reside in Minnesota with relevant information and importance to this case, including employees knowledgeable about the design, development, testing, and sale of the accused products. (Feist Decl., ¶¶ 8-10.) Additional witnesses knowledgeable about the marketing and sale of the accused products also work and reside in Minnesota. (*Id.*, ¶¶ 12-14.) In addition, there are even former employees of STL with relevant knowledge on these same topics that also reside in Minnesota. (*Id.*, ¶¶15-18.)

For these non-party witnesses—who will likely constitute the vast majority of relevant fact witnesses in this case—the District of Minnesota would be far more convenient and less costly. These current and former STL employees living in Minnesota would be required to travel almost 1,000 miles to get to Marshall, Texas. *TS Tech*, 551 F.3d at 1320 (finding "clear error" in the failure to consider 900 miles of travel for witnesses). The clear convenience of the District of Minnesota for these non-party witnesses should be afforded "more weight" than the convenience of party witnesses. *Jawbone Innovations, LLC v. Samsung Elecs. Co.*, 2022 WL 4004195 at *5 (E.D. Tex. Aug. 31, 2022).

Moreover, none of the inventors are located in Texas (Exs. Q-V), and none of the prior owners of the asserted patents are located in Texas either (Exs. B-D).

*Party Witnesses:* Because Defendants were not involved in the design, development, marketing, or sale of the accused devices in the United States, Defendants do not anticipate having any party witnesses with relevant knowledge applicable to this case. (Shay Decl., ¶¶ 4-8.) Indeed, none of the Defendants have any employees in the United States. (*Id.*)

The District of Minnesota would also appear to be a more convenient venue for MRL's witnesses. MRL may have an office in Marshall (which appears to have been recently formed for venue purposes), but it does not appear to have any employees or other relevant witnesses there. To the contrary, MRL's managers are located in New York (Ex. N at 42-43; Exs. Y-Z), and the District of Minnesota is significantly closer and more convenient for them under the Fifth Circuit's 100-mile rule (Exs. AA-BB (shorter distance from New York to MN)). Indeed, there are direct flights from New York to the Minneapolis airport, and the federal court in Minnesota is located a few miles away in Minneapolis/St. Paul. (Exs. CC-DD.) These facts clearly favor transfer. *See In re Google LLC*, 2022 WL 1613192, at *4 (Fed. Cir. 2022) (ordering transfer where plaintiff's principals did not work in the Eastern District of Texas and plaintiff "leased its office just prior to commencing litigation in" the District "to establish a presence for forum selection").

The Court should also disregard any attempt by MRL to argue that this District is a more convenient forum based on its recent organization under Texas law and Marshall office location. This is nothing more than a "construct for litigation" that exists "for no other purpose than to manipulate venue." *In re Microsoft Corp.*, 630 F.3d 1361 (Fed. Cir. 2011); *see also In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (citation omitted) (finding that transfer of documents to a Texas office space was "recent, ephemeral, and an artifact of litigation," and therefore "entitled to no weight in the court's venue analysis"); *Hoffmann-La Roche*, 587 F.3d at 1337.

In sum, for the vast majority of potential fact witnesses in this case, the District of Minnesota would be far more convenient. In contrast, there are no potential party or non-party witnesses in this District. This factor thus weighs heavily in favor of transfer to avoid the real and avoidable burden that non-party STL witnesses would face if required to travel to Marshall for a

trial or other proceedings. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 317 (5th Cir. 2008) ("*Volkswagen II*") (recognizing that witnesses suffer "personal costs associated with being away from work, family, and community").

### b. The District of Minnesota Has Compulsory Process Over Non-Party Witnesses, and this Court Does Not

"The fact that the transferee venue is a venue with usable subpoena power . . . weighs in favor of transfer, and not only slightly." *Genentech*, 566 F.3d at 1345. "Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses" than the transferor district. *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 874 (E.D. Tex. 2013). And if third party witnesses are overwhelmingly located within the subpoena power of only the transferee venue, "this factor favors transfer even without a showing of unwillingness for each witness." *In re Hulu, LLC*, 2021 WL 3278194, at *4 (Fed. Cir. 2021) (citations omitted).

Here, as already explained above, there are multiple non-party witnesses from STL and former STL employees with knowledge related to the design and development of the accused devices that are located in Minnesota. (Feist Decl., ¶¶ 8-10.) Importantly, former STL employees who worked on the design and development of the accused products are also located in Minnesota. (*Id.*, ¶¶ 15-18.) For such witnesses, the District of Minnesota has the power to compel them to appear at trial. *See In re Apple Inc.*, 2021 WL 5291804, at *3 (Fed. Cir. 2021) (finding this factor "weighs strongly in favor of transfer" where "potential third-party witnesses [were] subject to the subpoena powers of the [transferee district] but not the [transferor district]"). Given the importance of these witnesses to this case, this alone should weigh heavily in favor of transfer.

In stark contrast, Defendants are not aware of any relevant non-party witnesses in this District. Given the one-sided balance of witnesses with respect to the subpoena powers of the

District of Minnesota and this District, unanimously favoring Minnesota, this factor weighs heavily in favor of transfer. *Genentech*, 566 F.3d at 1345.

### c. Sources of Proof are Heavily Concentrated in the District of Minnesota, and There is No Relevant Evidence in this District

Courts must also consider the relative ease of access to sources of proof. *TS Tech*, 551 F.3d at 1319. And "while electronic storage of documents makes them more widely accessible than was true in the past, that does not make the sources-of-proof factor irrelevant." *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1321 (Fed. Cir. 2021) (citing *Volkswagen II*, 545 F.3d at 316). This is particularly true where the personnel who created the relevant documents are located in one jurisdiction but not the other. *See, e.g.*, *In re Apple Inc.*, 2022 WL 1196768, at *4 (Fed. Cir. 2022).

This factor favors transfer because, as explained above, relevant evidence related to the research, design, development, manufacturing, marketing, and sale of the accused devices is located in Minnesota. (Feist Decl., ¶ 20.) *See In re Netflix, Inc.*, 2022 WL 167470, at *3 (Fed. Cir. 2022) ("sources of proof" factor favors transfer where declaration shows that the defendant's "product and engineering teams are based" in transferee forum and source code and "documentation about the research, design, and development" of the accused products exists there). The fact that STL is a third-party makes no difference and does not detract from the clear advantage to accessing these sources of proof in the District of Minnesota—if anything, this further supports transfer. *In re Google LLC*, 58 F.4th 1379, 1385 (Fed. Cir. 2023) (factor favors transfer where "third-party companies that provide certain accused functionality for the accused products" are located in the transferee district).

On the other side of the scale, Defendants are not aware of any relevant documents or other sources of proof in this District. MRL has not identified any relevant evidence in this District, and likely does not have any documentary evidence at its ephemeral office location in Marshall.

Moreover, the asserted patents were developed at Spansion, which was based in California, and the subsequent owners of the Asserted Patents, including Cypress and Monterey Research, were also located in California. (Exs. B-D.) Moreover, the inventors and any relevant documentation they might possess are not located in Texas. (Exs. Q-V.) Thus, relevant evidence on issues such as conception/reduction to practice, licensing efforts, or potential prior art is likely located in other venues—not Texas. But regardless, the presence of evidence in other forums has no bearing on the analysis. *In re Toyota Motor Corp.*, 747 F.3d at 1340 ("The comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums.").

In sum, comparing the wealth of evidence from third-party STL in Minnesota with the lack of evidence in this District, the "ease of access to sources of proof" factor favors transfer. *TS Tech.*, 551 F.3d at 1319, 1321 (weighing this factor in favor of transfer when the physical and documentary evidence was located near the transferee venue and none was located in Texas); *SQIP, LLC v. Cambria Co.,* LLC, 728 F. Supp. 3d 447, 455 (E.D. Tex. 2024) (weighing this factor in favor of transfer where the accused infringer's documents were kept in Minnesota, not Texas); *In re: NetScout Sys., Inc.*, 2021 WL 4771756, at *4 (Fed. Cir. 2021); *Apple*, 2021 WL 5291804, at *3.

### d. There are No Practical Problems with Transferring this Case

This case is in its infancy; at the time of filing this motion, no discovery has been conducted and the Court has had little involvement in the case. This District has granted transfer under similar facts where the case remained "in its early stages" in discovery and there was "no improper delay" by either party. *See, e.g., Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*, 2015 WL 123852, at *6 (E.D. Tex. Jan. 7, 2015). This factor therefore favors transfer.

### 4. The Public Interest Factors Favor Transfer

#### a. The District of Minnesota Has a Strong Local Interest

This factor analyzes the "significant connections between a particular venue and ***the events that gave rise to a suit***." *Apple*, 2021 WL 5291804 at *5 (internal quotations omitted) (emphasis in original). Where a district lacks "any meaningful connection or relationship with the circumstances" of the case, this factor "weighs heavily in favor of" transfer. *Volkswagen I*, 371 F.3d at 206; *see Google*, 2022 WL 1613192 at *4 (district "where the accused products were designed and developed . . . had a substantial local interest in resolving the dispute, whereas plaintiff's patent-litigation-inspired connections to its chosen forum were 'not entitled to significant weight'") (citation omitted).

Here, the center of gravity and locus of events giving rise to MRL's lawsuit lies in Minnesota—certainly not the Eastern District of Texas. Indeed, "[i]t is undisputed that [STL] researched, designed, and developed [the accused products] in [Minnesota]. These are significant factors that give the [District of Minnesota] a legitimate interest in adjudicating the cases 'at home.'" *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021); *see also In re DISH Network L.L.C.*, 2021 WL 4911981, at *3 (Fed. Cir. 2021) (stating that "when fairly applied, the local interest factor also favors transfer" based on transferee district's "significant connection to the design and development of the accused features"). Because this case "calls into question the work and reputation" of individuals residing in Minnesota, including STL's current and former employees responsible for the accused devices, Minnesota's local interest in this case "remains strong." *Hoffmann-La Roche*, 587 F.3d at 1336.

On the other hand, this District does not have any interest in or connection to the subject matter of this controversy. The only potential ties to this District are MRL's recent formation under Texas law and the purported space it allegedly occupies in Marshall. (Dkt. 1, ¶ 1.) But as explained

above, these ties are "a construct for litigation [that] exist for no other purpose than to manipulate venue," and are entitled to no weight. *Microsoft*, 630 F.3d at 1365; *see also Jawbone Innovations, LLC v. Amazon*, 2:21-CV-00435-JRG, Dkt. 60 at 16 (E.D. Tex. Sept. 21, 2022) (factor weighing in favor of transfer where plaintiff was founded as a Texas LLC less than four months before filing its lawsuit). And the fact that non-party STL markets its products nationwide does not establish an interest in having the case tried in Texas. *TS Tech*, 551 F.3d at 1321; *Vigilos, LLC v. Sling Media, Inc.*, 2011 WL 13156923 at *6 (E.D. Tex. July 25, 2011).

The District of Minnesota has a profound local interest in the subject matter of this action that substantially outweighs the superficial, litigation-driven interest MRL manufactured here. For these reasons, this factor weighs in favor of transfer to the District of Minnesota.

### b.  Court Congestion Does Not Weigh Against Transfer

The court congestion factor is entitled to little weight here and should be viewed as neutral. MRL is a non-practicing entity and "is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution and give some significance to the time-to-trial difference." *Google*, 58 F.4th at 1383; *In re Morgan Stanley*, 417 F. App'x 947, 950 (Fed. Cir. 2011) (not assigning significant weight to this factor where the plaintiff "acknowledges that it does not make or sell any product that practices the claimed invention"). Thus, regardless of court congestion or a potentially faster time-to-trial in this District, there is no practical impact to MRL. *Google*, 58 F.4th at 1383 (district court abused its discretion in relying on time to trial to deny transfer where the plaintiff was not engaged in competition).

In addition, the Federal Circuit has long regarded the court congestion factor as "the most speculative." *Genentech*, 566 F.3d at 1347. Thus, while this District may have a shorter median time to trial than the District of Minnesota, this should not weigh against transfer. *See In re Clarke*,

94 F.4th 502, 510 (5th Cir. 2024) (recognizing such statistics are not "particularly relevant" in assessing court congestion). This factor should be viewed as neutral.

### c.  The Remaining Public Interest Factors are Neutral

Both this District and the District of Minnesota are familiar with and can apply the federal patent laws. *TS Tech*, 551 F.3d at 1320. In addition, transfer to the District of Minnesota will not create any problems with conflict of laws. Thus, these two remaining factors are neutral.

*    *    *

For these reasons, this case should be transferred to the District of Minnesota.

### C.  In the Alternative, the Action Should Be Dismissed Under Rule 12(b)(6)

If the Court concludes that it has personal jurisdiction and declines to transfer venue, the Complaint should be dismissed under Rule 12(b)(6).[5]

### 1.  Legal Standard for Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading offering 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action' will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement." *Wesley v. Neal*, 2024 WL 911720, at *4 (E.D. Tex. Mar. 4, 2024). "Courts need not accept legal conclusions as true, and threadbare recitals of the elements

---

[5] If the Court grants the motion to dismiss Seagate Holdings, Seagate International, and Seagate Netherlands for lack of personal jurisdiction and/or grants the motion to transfer venue to the District of Minnesota, then the Court need not decide the Rule 12(b)(6) motion, which can be decided by the District of Minnesota after transfer.

of a cause of action, supported by mere conclusory statements, are not sufficient." *Id.* (citing *Iqbal*, 556 U.S. at 677-78).

Direct infringement of a United States patent only occurs when an unauthorized party "makes, uses, offers to sell, or sells [the] patented invention, ***within the United States***." 35 U.S.C. § 271(a); *Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 441 (2007) ("It is the general rule under United States patent law that no infringement occurs when a patented product is made and sold in another country."). Thus, where "the activity complained of took place wholly outside of the United States," accusations of direct infringement are generally "able to be quickly disposed of in a Rule 12(b)(6) motion to dismiss." *Litecubes, LLC v. N. Light Prods.*, 523 F.3d 1353, 1366 n.14 (Fed. Cir. 2008).

Induced infringement requires (1) underlying direct infringement by another; and (2) that the defendant undertook an affirmative act to encourage infringement, with knowledge that its actions would cause infringement. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016). Contributory infringement requires conduct within the United States. 35 U.S.C. § 271(c) ("Whoever offers to sell or sells within the United States or imports into the United States . . . shall be liable as a contributory infringer."); *see also Honeywell Int'l Inc. v. Acer Am. Corp*, 655 F. Supp. 2d 650, 659 n.3 (E.D. Tex. 2009) ("[T]he Court rejects Honeywell's argument that section 271(c) liability can extend to extra-territorial conduct.").

### 2. MRL's Direct Infringement Claims Fail

MRL's direct infringement claims should be dismissed for three reasons. First, the Complaint fails to allege any facts beyond threadbare legal conclusions and recitations of the infringement statute to show any infringing ***act*** by any Defendant ***in the United States***. For each patent, the Complaint recites identical allegations of direct infringement, stating only that the Defendants infringe "by making, using, offering to sell, selling, and/or importing into the United

States products that satisfy each and every limitation of one or more claims of the [asserted] Patent." (Dkt. 1, ¶ 34; *see also id.*, ¶¶ 55, 72, 86, 99, 116, 132, 147.) In other words, the Complaint simply recites the statutory language of 35 U.S.C. § 271. But it lacks any ***factual*** allegations related to any of the five Defendants' actual use, making, sale, offering for sale, or importing of the accused products in the United States. (*Id.*, ¶¶ 31-46, 52-62, 69-76, 83-89, 96-106, 113-22, 129-38, 144-53.) These threadbare allegations, which only "parrot" the statutory language, "amount[] to a mere legal conclusion that the court is not bound to accept as true." *Westech*, 927 F.3d at 1382 (Fed. Cir. 2019); *accord Connelly*, 809 F.3d at 790 (explaining that allegations that "paraphrase in one way or another the pertinent statutory language or elements of the claims in question" are "disentitled to any presumption of truth"). Thus, the Complaint should be dismissed. *See Daedalus Prime LLC v. MediaTek, Inc.*, 2025 WL 825188, at *1 (E.D. Tex. Mar. 13, 2025) (granting motion to dismiss infringement allegations where complaint included "no more than a threadbare recitation of the elements"); *Twombly*, 550 U.S. at 555 (explaining a court is "not bound to accept as true a legal conclusion couched as a factual allegation").

Second, even if MRL's threadbare allegations of direct infringement were found to suffice (they do not), MRL faces a second problem: it does not and cannot allege any facts giving rise to a plausible inference that any of the Defendants committed acts of infringement ***in the United States***. *Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1380 (Fed. Cir. 2009) ("Critically, it is the infringing act . . . that must be within (or into) the United States."); *see also Microsoft*, 550 U.S. at 455 (patent law limited to domestic effect).

MRL recognizes that Defendants are *foreign entities* organized under the laws of various foreign jurisdictions with places of business outside of the United States. (Dkt. 1, ¶¶ 3-7.) MRL fails to allege any facts regarding the operations of any of the Defendants whatsoever, let alone

any operations in the United States. (*Id.*, ¶¶ 3-11.) Because the Complaint fails to tie any extraterritorial activities of these foreign entities to the United States with any factual support, MRL's direct infringement claims are not plausible. *See Litecubes*, 523 F.3d at 1366 n.14 (explaining that cases involving activity taking place wholly outside of the United States "will often be able to be quickly disposed of in a Rule 12(b)(6) motion to dismiss for failure to state a claim or in a motion for summary judgment").

Of course, MRL's inability to provide sufficient factual support for its direct infringement allegations is a direct consequence of its tactical choice to sue only foreign Seagate entities and not STL, which is the entity actually responsible for the importation into and sale of the accused products in the United States. (Shay Decl., ¶ 12.)

Third, MRL's decision to indiscriminately lump together all of the Defendants in its direct infringement allegations—through broad references to the "Defendants" collectively—makes it impossible to decipher what infringing act, if any, was allegedly performed in the United States by each named Defendant. (Dkt. 1, ¶¶ 33, 54, 71, 85, 98, 115, 131, 146 (broadly referring to actions of the "Defendants").) Indeed, there is not a single factual allegation regarding any infringing act by any individual Defendant. This kind of imprecise, vague pleading is insufficient under *Iqbal* and *Twombly*. *See, e.g.*, *Promos Techs., Inc. v. Samsung Elecs. Co. Ltd.*, 2018 WL 5630585, at *3 (D. Del. Oct. 31, 2018) ("Rule 12(b)(6) requires a complaint alleging infringement against multiple defendants to adequately identify specific infringing acts of each defendant.") (cleaned up).

Seagate acknowledges that this Court has, on prior occasions, found that plaintiffs are not required to identify alleged actions "on a defendant-by-defendant basis." *Lucas v. Chesapeake Expl., L.L.C.*, 2013 WL 5200046, at *3 (E.D. Tex. Sept. 16, 2013); *see also Canon, Inc. v. TCL Elecs. Holdings Ltd.*, 2020 WL 1478356, at *5 (E.D. Tex. Mar. 25, 2020). Seagate respectfully

submits that those cases are distinguishable because, unlike here, the complaints in those cases provided at least some factual allegations as to the relationship among the named defendants. *See Canon*, 2020 WL 1478356, at *5 ("Canon's FAC pleads . . . facts showing corporate relationships between Defendants"); *see also Lucas v. Chesapeake Exploration*, Case No. 2:12-cv-592-JRG, Dkt. 1 at 1.11-1.12 (E.D. Tex. Sept. 7, 2012) (allegations as to the relationship of defendants). In this case, the Complaint is devoid of any allegations regarding the specific actions taken by any of the five Defendants in the United States, let alone ***any*** allegations regarding the relationship between them. (Dkt. 1, ¶¶ 3-7.) MRL's failing in this regard brings this case outside the realm of *Chesapeake* and *Canon*, and dismissal of the direct infringement claims is warranted.

### 3.  MRL's Indirect Infringement Claims Fail

Without a plausible allegation of direct infringement, MRL's indirect infringement claims necessarily fail. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement . . ..").

MRL's induced infringement claims additionally fail because MRL fails to plausibly allege that acts of inducement are performed by the Defendants. *Id.* Notably, MRL does not allege that the Defendants have control over the instructions or documentation relied on by MRL. (*See* Dkt. 1, ¶¶ 63, 77, 90, 107, 123, 139, 154.)

Likewise, MRL's contributory infringement claims also fail because MRL does not (and cannot) plead facts to support an infringing act by the Defendants within the United States as required by 35 U.S.C. § 271(c). ("Whoever offers to sell or sells ***within the United States or imports into the United States*** . . . shall be liable as a contributory infringer."); *see also Honeywell*, 655 F. Supp. 2d at 659 n.3 ("[T]he Court rejects Honeywell's argument that section 271(c) liability can extend to extra-territorial conduct.").

Moreover, the contributory infringement claims fail because the Complaint does not specifically identify the component(s) that each Defendant allegedly contributes. *See* 35 U.S.C. § 271 ("Whoever offers to sell or sells within the United States or imports into the United States *a component of* a patented machine, manufacture, combination or composition . . ."). The Complaint generally alleges that the "Defendants" sell the accused products in this District (even though they do not)—but the Complaint does not identify *any* component allegedly provided by the Defendants that could otherwise result in a finding of contributory infringement. (*See, e.g.*, Dkt. 1, ¶ 78 (generically identifying "accused components").) With no identification of any specific components, MRL's allegations are impermissibly vague, and dismissal is warranted. *See InMotion Imagery Techs. v. Brain Damage Films*, 2012 WL 3283371, at *4 (E.D. Tex. Aug. 10, 2012) (dismissing contributory infringement claim where the complaint "[did] not identify the components used in the infringing method").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss all claims against Seagate Holdings, Seagate International, and Seagate Netherlands for lack of personal jurisdiction and transfer the case against Seagate Singapore and Seagate Thailand to the District of Minnesota. Alternatively, if the Court finds it has personal jurisdiction over Seagate Holdings, Seagate International, and Seagate Netherlands, Defendants request that the Court (1) transfer the entire case to the District of Minnesota or (2) sever Seagate Holdings, Seagate International, and Seagate Netherlands and stay this case and transfer the case against Seagate Singapore and Seagate Thailand to the District of Minnesota. Finally, if the Court denies the motions to dismiss for lack of personal jurisdiction and to transfer venue, Defendants respectfully request that the Court dismiss the Complaint because it fails to state a claim upon which relief can be granted.

████████████

Dated: September 10, 2025        Respectfully Submitted,

                                 */s/  Chad Drown*_____  _____
                                 Melissa R. Smith
                                 State Bar No. 24001351
                                 melissa@gillamsmithlaw.com
                                 GILLAM & SMITH LLP
                                 303 South Washington Avenue
                                 Marshall, Texas 75670
                                 Telephone: (903) 934-8450
                                 Facsimile: (903) 934-9257

                                 FAEGRE DRINKER BIDDLE & REATH LLP

                                 David J.F. Gross – Lead Attorney (admitted *pro hac vice*)
                                 david.gross@faegredrinker.com
                                 AZ Bar No. 039034
                                 4800 North Scottsdale Road, Suite 2200
                                 Scottsdale, AZ 85251
                                 Telephone: 1 (480) 643-1850

                                 Chad Drown (admitted *pro hac vice*)
                                 chad.drown@faegredrinker.com
                                 MN Bar No. 0319053
                                 Katherine S. Razavi (admitted *pro hac vice*)
                                 kate.razavi@faegredrinker.com
                                 MN Bar No. 0388958
                                 Kirsten L. Elfstrand (admitted *pro hac vice*)
                                 kirsten.elfstrand@faegredrinker.com
                                 MN Bar No. 0401213
                                 2200 Wells Fargo Center
                                 90 South Seventh Street
                                 Minneapolis, MN 55402
                                 Telephone: 1 (612) 766-7000
                                 Facsimile: 1 (612) 766-1600

                                 ***Attorneys for Defendants***

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed electronically on September 10, 2025 pursuant to Local Rule CV-5(a) and has been served on all counsel who have consented to electronic service.

*/s/ Chad Drown*
Chad Drown

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that, pursuant to Local Rule CV-5(a)(7), Defendants have filed a Motion to Seal seeking the appropriate order from the Court for the foregoing Motion to be filed under seal.

*/s/ Chad Drown*
Chad Drown

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for Seagate has complied with the meet-and-confer requirement in Local Rule CV-7(h). This motion is opposed. The personal conference required by Local Rule CV-7(h) was conducted on September 10, 2025. The parties were unable to reach agreement as to Seagate's requested relief.

*/s/ Chad Drown*
Chad Drown