# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

|  |  |  |
|---|---|---|
| MR LICENSING LLC, | § § § | Case No. 2:25-cv-00596-JRG |
| Plaintiff, | § § | **JURY TRIAL DEMANDED** |
| v. | § § § | ████████████████ |
| SEAGATE TECHNOLOGY HOLDINGS PLC, SEAGATE SINGAPORE INTERNATIONAL HEADQUARTERS PTE. LTD., SEAGATE TECHNOLOGY INTERNATIONAL, SEAGATE TECHNOLOGY (THAILAND) LIMITED, and SEAGATE TECHNOLOGY (NETHERLANDS) BV, | § § § § § § § § § § | |
| Defendants. | § § | |

**PLAINTIFF MR LICENSING LLC'S RESPONSE IN OPPOSITION TO DEDENDANTS' MOTION TO DISMISS AND TRANSFER (DKT. 22)**

# <u>TABLE OF CONTENTS</u>

**Page(s)**

I.  INTRODUCTION ........................................................................................................... 1

II.  BACKGROUND .......................................................................................................... 2

    A.  Procedural Background....................................................................................... 2

    B.  Plaintiff MR Licensing LLC ............................................................................. 2

    C.  Defendants ......................................................................................................... 3

III.  LEGAL STANDARDS ............................................................................................... 4

    A.  Rule 12(b)(2)...................................................................................................... 4

    B.  28 U.S.C. § 1404 ............................................................................................... 6

    C.  Rule 12(b)(6)...................................................................................................... 7

IV.  ARGUMENT ............................................................................................................... 8

    A.  Personal Jurisdiction Is Proper Over Defendants Seagate plc, Seagate
        International, and Seagate Netherlands................................................................ 8

        1.  Personal Jurisdiction Is Proper Over Defendants Under the
            Stream of Commerce Theory................................................................. 8

        2.  This Court Has Personal Jurisdiction Because Defendants Act in
            Consort with Seagate Subsidiaries as a Single Entity that Directs
            its Activities to the United States and Texas ......................................... 11

        3.  Specific Jurisdiction Is Appropriate Under an Agency or Alter
            Ego Theory............................................................................................ 14

        4.  Exercising Specific Jurisdiction Over Defendants I Reasonable
            and Fair ................................................................................................. 16

        5.  Personal Jurisdiction Is Proper Under Rule 4(k)(2)................................. 17

        6.  In the Alternative, Jurisdictional Discovery Is Warranted....................... 19

    B.  Defendants Have Failed to Meet Their Significant Burden to
        Demonstrate that D. Minn. Is Clearly More Convenient for All Parties ............. 20

        1.  The Private Interest Factors Weigh Against Transfer.............................. 21

a.  Relative Ease of Access to Sources of Proof Weighs Against Transfer......................................................... 21

b.  The Cost of Attendance of Willing Witnesses Weighs Against Transfer......................................................... 23

c.  Compulsory Process Over Non-Party Witnesses Does Not Weigh in Favor of Transfer.......................................... 24

d.  All Other Practical Problems Weigh Heavily Against Transfer .................................................................... 25

2.  Public Factors Do Not Weigh in Favor of Transfer................................. 26

a.  Court Congestion Weighs Against Transfer ................................ 26

b.  The Local Interest in Having Localized Interests Decided at Home .................................................................. 27

c.  The Remaining Public Interest Factors Do Not Weigh in Favor of Transfer ............................................................ 27

C.  MRL's Infringement Claims Should Not Be Dismissed ..................................... 27

V.  CONCLUSION........................................................................... 30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACQIS LLC v. Lenovo Grp. Ltd.*,
  572 F. Supp. 3d 291 (W.D. Tex. 2021)..............................................................9, 10

*Admar Int'l, Inc. v. Eastrock, L.L.C.*,
  18 F.4th 783 (5th Cir. 2021) ...................................................................................14

*AGIS Software Dev. LLC v. Apple Inc.*,
  No. 2:17-CV-00516-JRG, 2018 WL 2721826 (E.D. Tex. June 6, 2018) ......................6, 21, 27

*AGIS Software Dev. LLC v. Huawei Device USA, Inc.*,
  No. 2:17-CV-00513-JRG, 2018 WL 2329752 (E.D. Tex. May 23, 2018) .............................24

*Aloft Media, LLC v. Adobe Sys. Inc.*,
  No. 6:07-cv-355, 2008 WL 819956 (E.D. Tex. Mar. 25, 2008) ..........................................20

*In re Apple Inc.*,
  No. 2018-151, Dkt. 20 (Fed. Cir. Oct. 16, 2018)........................................................6

*AX Wireless LLC v. Lenovo Grp. Ltd.*,
  No. 2:22-cv-00280-RWS-RSP, 2023 WL 7105701 (E.D. Tex. Sept. 6, 2023) .............. *passim*

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................................7

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
  21 F.3d 1558 (Fed. Cir. 1994)....................................................................8, 10, 12

*Blitzsafe Texas LLC v. Mitsubishi Elec. Corp.*,
  No. 2:17-cv-00418-JRG, 2019 WL 2210686 (E.D. Tex. May 22, 2019)...............................19

*Brooks & Baker, L.L.C. v. Flambeau, Inc.*,
  No. 2:10-cv-146-TJW-CE, 2011 WL 4591905 (E.D. Tex. Sept. 30, 2011) ...........................15

*Campbell Pet Co. v. Miale*,
  542 F.3d 879 (Fed. Cir. 2008)...................................................................................5

*Celgard, LLC v. SK Innovation Co.*,
  792 F.3d 1373 (Fed. Cir. 2015).............................................................................4, 5

*Cephalon, Inc. v. Watson Pharms., Inc.*,
  629 F. Supp. 2d 338 (D. Del. 2009)......................................................................16

iii

*In re Chamber of Commerce of the U.S. of Am.*,
   105 F. 4th 297 (5th Cir. 2024) ........................................................................26

*Core Wireless Licensing, S.A.R.L. v. Apple, Inc.*,
   No. 6:12-CV-100-LED-JDL, 2013 WL 682849 (E.D. Tex. Feb. 22, 2013).......................6, 22

*CXT Sys., Inc. v. Container Store, Inc.*,
   No. 2:18-cv-00173, 2019 WL 1506015 (E.D. Tex. Apr. 5, 2019) ..........................................6

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)........................................................................................16

*Defense Distrib. v. Bruck*,
   30 F.4th 414 (5th Cir. 2022) .............................................................................6

*Elecs. For Imaging, Inc. v. Coyle*,
   340 F.3d 1344 (Fed. Cir. 2003).........................................................................5

*Fundamental Innovation Sys. Int'l, LLC v. ZTE Corp.*,
   No. 3:17-cv-1827-N, 2018 WL 3330022 (N.D. Tex. Mar. 16, 2018) ....................................15

*Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*,
   No. 5:08CV26, 2009 WL 1025467 (E.D. Tex. Mar. 26, 2000).................................8

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)........................................................................................5

*J2 Glob. Commc'ns Inc. v. Protus IP Sols., Inc.*,
   No. 6:08-CV-211, 2009 WL 440525 (E.D. Tex. Feb. 20, 2009)............................................22

*Japan Display Inc. v. Tianma Microelectronics Co.*,
   No. 2:20-CV-00283-JRG, 2021 WL 3772425 (E.D. Tex. Aug. 25, 2021).............................7

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
   869 F.3d 1372 (Fed. Cir. 2017)........................................................................8

*Lormand v. US Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009) ...........................................................................8

*Merial Ltd. v. Cipla Ltd.*,
   681 F.3d 1283 (Fed. Cir. 2012).........................................................................4, 5

*Monarch Networking Sols., LLC v. Cisco Sys., Inc.*,
   No. 2:20-cv-00015-JRG, Dkt. 141 (E.D. Tex. Jan. 15, 2021) .............................................24

*Monterey Rsch. LLC v. Renesas Elecs. Corp.*,
   No. 2:24-cv-00238-JRG, Dkt. 50 (E.D. Tex. Oct. 24, 2024)................................................3, 23

*Monterey Rsch. LLC v. Toshiba Am. Elec. Components, Inc.*,
     No. 6:23-cv-00340, Dkt. 1 (W.D. Tex. May 9, 2023) ...........................................25

*Motiva Pats., LLC v. Sony Corp.*,
     No. 9:18-cv-00180-JRG, 2019 WL 4737051 (E.D. Tex. Sept. 27, 2019) ................................7

*Multimedia Techs. Pte. Ltd. v. LG Elecs. Inc.*,
     No. 2:22-cv-00494-JRG-RSP, 2024 WL 1340360 (E.D. Tex. Mar. 1, 2024) ........................7

*Nalco Co. v. Chem-Mod, LLC*,
     883 F.3d 1337 (Fed. Cir. 2018).......................................................................27

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
     626 F.3d 1222 (Fed. Cir. 2010).......................................................................5

*O'Daniel v. Indus. Serv. Sols.*,
     922 F.3d 299 (5th Cir. 2019) .........................................................................7

*Oppenheimer Fund, Inc. v. Sanders*,
     437 U.S. 340 (1978)....................................................................................19

*Peteski Prods., Inc. v. Rothman*,
     No. 5:17-cv-00122-JRG, 2017 WL 8943154 (E.D. Tex. Nov. 13, 2017) .............................24

*Polar Electro Oy v. Suunto Oy*,
     829 F.3d 1343 (Fed. Cir. 2016).......................................................................9, 14

*Quest NetTech Corp. v. Apple Inc.*,
     No. 2:19-CV-00118-JRG, 2019 WL 6344267 (E.D. Tex. Nov. 27, 2019)............................25

*Realtime Adaptive Streaming, LLC v. Amazon.com, Inc.*,
     No. 6:17-CV-00549-JRG, 2018 WL 4444097 (E.D. Tex. Sept. 5, 2018) .............................26

*RightQuestion, LLC v. Samsung Elecs. Co.*,
     No. 2:21-CV-00238-JRG, 2022 WL 507487 (E.D. Tex. Feb. 18, 2022) ...............................30

*Sangha v. Navig8 ShipManagement Priv. Ltd.*,
     882 F.3d 96 (5th Cir. 2018) ...........................................................................6

*Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*,
     170 F. Supp. 3d 928 (E.D. Tex. 2016)...............................................................7

*SGK Props., L.L.C. v. U.S. Bank Nat'l Ass'n for Lehman Bros. Small Balance
     Com. Mortg. Pass-Through Certificates, Series
     2007-3*, 881 F.3d 933 (5th Cir. 2018), *cert. denied sub nom. SGK Props.
     L.L.C. v. U.S. Bank Nat. Ass'n*, 139 S. Ct. 274 (2018) ...........................................30

*Skinner v. Switzer*,
    562 U.S. 521 (2011) ........................................................................................7

*Slyde Analytics, LLC v. Zepp Health Corp.*,
    No. 2:23-cv-00172-RWS-RSP, 2024 WL 3927228 (E.D. Tex. Aug. 22, 2024) ....................26

*Stuart v. Spademan*,
    772 F.2d 1185 (5th Cir. 1985) ..........................................................................15

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*,
    563 F.3d 1285 (Fed. Cir. 2009).....................................................................17, 18

*In re Taasera Licensing LLC, Pat. Litig.*,
    No. 2:22-MD-03042-JRG, 2023 WL 2716540 (E.D. Tex. Mar. 29, 2023).....................29, 30

*Tarkus Imaging, Inc. v. Adobe Sys., Inc.*,
    No. 10-63-LPS, 2011 WL 1557930 (D. Del. Apr. 21, 2011) .....................................28

*Titanide Ventures, LLC v. Int'l Bus. Machs. Corp.*,
    No. 4:12-CV-196, 2010 WL 5507327 (E.D. Tex. Oct. 18, 2012) ...............................30

*Viskase Cos. v. World Pac. Int'l AG*,
    710 F. Supp. 2d 754 (N.D. Ill. 2010) ...................................................................16

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ............................................................................7

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ............................................................................6

*World Tanker Carriers Corp. v. MV Ya Mawlaya*,
    99 F.3d 717 (5th Cir. 1996) ............................................................................18

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
    952 F. Supp. 1119 (W.D. Pa. 1997).....................................................................14

**Statutes**

28 U.S.C. § 1404(a) .........................................................................................6

35 U.S.C. § 271.............................................................................................28

35 U.S.C. § 271(c) .........................................................................................29

**Other Authorities**

Fed. R. Civ. P. 4(k)(2)..............................................................................4, 17, 18, 19

Fed. R. Civ. P. 12(b)(2).........................................................................................5

Fed. R. Civ. P. 12(b)(6)....................................................................................7, 30

Fed. R. Civ. P. 45(c)(3)(B)(iii) ...........................................................................25

Fed. R. Civ. P. 45(c)(3)(C) .................................................................................25

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
|---|---|
| 1 | Declaration of Jon Scahill |
| 2 | Declaration of Daniel O'Brien |
| 3 | Seagate Annual Report Form 10-K for the fiscal year ended June 27, 2025 |
| 4 | Seagate Management System Certificate |
| 5 | Seagate Completes Acquisition of Intevac, dated March 31, 2025 |
| 6 | TechCrunch, Seagate acquires Intevac which makes equipment for hard disk drives, for $119M, dated February 13, 2025 |
| 7 | Seagate Our Story |
| 8 | Seagate - All Products |
| 9 | Where to Buy Seagate Products |
| 10 | Seagate's Exhibit 21.2, List of Subsidiaries |
| 11 | Seagate Highlights Strategy to Build Long-Term Value in Today's Data-driven World at 2025 Investor and Analyst Event |
| | ███████████████████████████████████████ |
| | ███████████████████████████ |
| | ████████████ |
| | █████████████████ |
| | █████████████ |
| | ██████ |
| | |
| | |
| 21 | Docket Navigator Time to Milestones Search, Minnesota District |
| 22 | Docket Navigator Time to Milestones Search, Texas Eastern District |
| 23 | Table C-5 U.S. District Courts Median Time Intervals from Filing to Disposition of Civil Cases Terminated |
| 24 | MR Licensing LLC Franchise Tax Account Status |

Plaintiff MR Licensing LLC ("MRL" or "Plaintiff"), through its undersigned counsel, files this response to Defendants Seagate Technology Holdings PLC, Seagate Singapore International Headquarters PTE. LTD., Seagate Technology International, Seagate Technology (Thailand) Limited, and Seagate Technology (Netherlands) BV's (collectively, "Seagate" or "Defendants") Motion to Dismiss and Transfer (Dkt. 22, "Mot."). For the reasons stated below, MRL respectfully requests the Motion be denied it its entirety.

## I.    INTRODUCTION

The Motion should be denied because (1) this Court has personal jurisdiction over the Defendants; (2) transfer to the District of Minnesota is not warranted; and (3) Plaintiff's direct and indirect infringement claims are sufficiently pled.

First, the Defendants clearly direct their activities toward the United States and the State of Texas. The Defendants have established a supply chain, over which the Defendants exert control and act in concert to distribute their products in the United States and Texas. While Defendants attempt to hide behind their purported corporate structure and contend that non-party Seagate Technology LLC is responsible for the activities in the United States, the Defendants' intentionally vague and limiting statements are telling. Acting in concert, the Defendants place their products into the stream of commerce with the expectation they will be purchased in Texas. Plaintiff has also alleged that the Defendants serve as agents and/or alter egos. Under this theory, exercise of personal jurisdiction over Defendants is fair and reasonable.

Second, transfer to the District of Minnesota ("D. Minn.") is not warranted where Defendants fail to meet their significant burden in establishing that the transfer would be clearly more convenient for all parties. Notably, in arguing that personal jurisdiction is improper as to the Defendants, Defendants note that the U.S. entity is responsible for the research and development, testing, importation, and sale of the Accused Products. Mot. at 1. Indeed, Defendants are based

*outside* of the United States, and any relevant sources of proof or witnesses would therefore be located outside of D. Minn. On the other hand, MRL's witnesses most knowledgeable about the issues in this case are located in Texas, Oklahoma, Tennessee, New York, and this District would be more convenient for those witnesses. All relevant transfer factors weigh against transfer or, are neutral, at best.

Lastly, Defendants' arguments regarding Plaintiff's direct and indirect infringement allegations are incorrect. Plaintiff has sufficiently pled the activities of the Defendants and the relationship between each of the Defendants in alleging infringement. Accordingly, the Motion should be denied in its entirety.

## II.     BACKGROUND

### A.     Procedural Background

The Complaint in the instant action was filed against Defendants on June 2, 2025, alleging infringement of U.S. Patent Nos. 10,204,041; 7,979,658; 8,239,611; 8,694,776; 9,734,049; 9,767,303; 11,093,383; and 11,609,847 (collectively, the "Asserted Patents").

### B.     Plaintiff MR Licensing LLC

Plaintiff MR Licensing LLC ("MRL") is the owner of all right, title, and interest in the Asserted Patents in this case.[1] Dkt. 1, ¶ 1; Ex. 1, ¶ 3. MRL is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business located at 313 South Washington Avenue, Marshall, Texas 75670. *Id.*, ¶ 4.

The technology underlying the Asserted Patents was developed by Spansion LLC ("Spansion"), a leading designer, developer, and manufacturer of memory products, which had over 3,700 employees and operated a wafer fabrication facility in Austin, Texas. Dkt. 1, ¶ 2.

---

[1] Contrary to Seagate's unsupported allegations, MRL is the owner of all right, title, and interest to the Asserted Patents.

Spansion merged with Cypress Semiconductor ("Cypress") in 2014 and the combined company operated under the Cypress name. *Id.* Cypress was acquired by Infineon Technologies in 2020. *Id.*

MRL expects to rely on witnesses either located in this District, much closer to this District than to D. Minn., or who are willing to travel to this District. Jon Scahill, the Manager of MRL, is located in New York and has knowledge regarding MRL and its parent, Quest Patent Research Corporation's business efforts related to the Asserted Patents, MRL's corporate structure, financials and recordkeeping, and the acquisition of the Asserted Patents. Ex. 1, ¶ 6. Daniel O'Brien, MRL's Licensing Manager, is located in both Dallas, Texas and San Antonio, Texas, and has knowledge regarding MRL's acquisition of the Asserted Patents, as well as its licensing practices, policies, and activities. Ex. 2, ¶ 4. Mr. O'Brien is an experienced patent licensing executive who is also an electrical engineer and attorney.

In addition, Monterey Research LLC ("Monterey"), the prior assignee of the Asserted Patents, engaged in communications with Defendants prior to the filing of the instant action. Richard Misiag, who is knowledgeable regarding Monterey's licensing efforts, corporate structure, financials, and communicated with Seagate about the Asserted Patents from 2020 to 2021 (Dkt. 1, ¶ 24) is located in Mounds, Oklahoma, which is significantly closer to this District than D. Minn. *Monterey Rsch. LLC v. Renesas Elecs. Corp.*, No. 2:24-cv-00238-JRG, Dkt. 50 at 6 (E.D. Tex. Oct. 24, 2024). Alfi Giundi, Vice President of IPValue Management, who resides in Harriman, Tennessee, is Monterey's agent and has knowledge regarding pre-suit correspondence with Defendants regarding the Asserted Patents, and any prior licensing history regarding the Asserted Patents, including settlement and license agreements entered by Monterey. *Id.*

### C.    Seagate Defendants

Defendant Seagate Technology Holdings plc ("Seagate plc") is an Irish corporation, with a place of business at 10 Earlsfort Terrace, Dublin, D02 T380 Ireland. Dkt. 1, ¶ 3. Defendant

Seagate Singapore International Headquarters Pte. Ltd. ("Seagate Singapore") is a Singaporean corporation, with a place of business located at 90 Woodlands Avenue 7, Singapore 737911, Singapore. *Id.*, ¶ 4. Defendant Seagate Technology International ("Seagate International") is a Cayman Islands corporation with its place of business at P.O. Box 309, Ugland House, South Church Street, George Town, Grand Cayman KY1-1104, Cayman Islands. *Id.*, ¶ 5. Defendant Seagate Technology (Thailand) Limited ("Seagate Thailand") is a Thai corporation, with its place of business located at 1627 Moo 7 Teparuk Road, Tambol Teparuk, Amphur Muang, Samutprakarn 10270, Thailand. *Id.*, ¶ 6. Defendants Technology (Netherlands) BV ("Seagate Netherlands") is a Dutch corporation, with its place of business located at Tupolevlaan 105, 1119 PA Schiphol-Rijh, The Netherlands. *Id.*, ¶ 7. Seagate plc is the ultimate parent of various Seagate entities, including Defendants Seagate Singapore, Seagate International, Seagate Thailand, and Seagate Netherlands. Ex. 3.

Defendants represent that they are the "leading provider of data storage technology and infrastructure solutions that enable enterprises and end users to confidently store and unlock the value of their data." *Id.*, 3. Defendants are affiliate operating companies that together with the other Seagate subsidiaries, form a global group that operates to research, design, manufacture, market, sell, offer for sale, import, and/or provide technical support for the Accused Products.

## III.    LEGAL STANDARDS

### A.    Rule 12(b)(2)

Federal Circuit law governs personal jurisdiction in patent cases. *See Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015). Rule 4(k)(2) of the Federal Rules of Civil Procedure applies to establish personal jurisdiction where a foreign defendant lacks substantial contacts with any single state but has sufficient contacts with the United States as a whole. *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012). The rule "allow[s] district courts to

exercise personal jurisdiction even if the defendant's contacts with the forum state would not support jurisdiction under the state's long-arm statute, as long as (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to personal jurisdiction in the courts of any state, and (3) the exercise of jurisdiction satisfies due process requirements." *Id.*

To satisfy due process, a defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). "The Federal Circuit applies a three prong test to determine if specific jurisdiction exists: (1) whether the defendant purposefully directed activities as residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). The plaintiff bears the burden to show that the defendant has minimum contacts with the forum under the first two prongs. *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003). If the plaintiff satisfies that burden, it then shifts to defendant to prove unreasonableness. *Id.*

"When the district court's determination of personal jurisdiction is based on affidavits and other written materials, and no jurisdictional hearing is conducted, the plaintiff usually bears only a prima facie burden." *Celgard*, 792 F.3d at 1378. "To make that showing, [plaintiff] need only demonstrate facts that, if true, would support jurisdiction over the Defendants." *Campbell Pet Co. v. Miale*, 542 F.3d 879, 888 (Fed. Cir. 2008) (citation omitted). "Unless directly contravened, [plaintiff's] version of the facts is taken as true, and conflicts between the facts contained in declarations submitted by the two sides must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *Id.* Courts have regularly recognized that motions to dismiss for lack of personal jurisdiction under Rule 12(b)(2) need not

be converted to one for summary judgment when matters outside the pleadings are considered. *See, e.g.*, *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) ("The district court is not obligated to consult only the assertions in the plaintiff's complaint in determining whether a *prima facie* case for jurisdiction has been made. Rather, the district court may consider the contents of the record at the time of the motion . . . .") (citation omitted).

### B.    28 U.S.C. § 1404

"When a defendant is haled into court, some inconvenience is expected and acceptable." *Defense Distrib. v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022). A motion to transfer venue pursuant to 28 U.S.C. § 1404(a) should be denied unless the movant "adduce[s] evidence and arguments that clearly establish good cause for transfer based on convenience and justice" *i.e.*, that the transferee venue is clearly more convenient for both the parties and the witnesses. *Id.*; *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). This "'places a significant burden on [Defendants] to show good cause for transfer:' a burden that this Court does not take lightly." *Core Wireless Licensing, S.A.R.L. v. Apple, Inc.*, No. 6:12-CV-100-LED-JDL, 2013 WL 682849, at *2 (E.D. Tex. Feb. 22, 2013). "[T]ransfer is inappropriate when it merely serves to shift inconveniences from one party to the other." *CXT Sys., Inc. v. Container Store, Inc.*, No. 2:18-cv-00173, 2019 WL 1506015, at *4 (E.D. Tex. Apr. 5, 2019) (citation omitted); *see In re Apple Inc.*, No. 2018-151, Dkt. 20 at 4 (Fed. Cir. Oct. 16, 2018) ("[C]onsidering the convenience of the parties, while the Eastern District of Texas may not be especially convenient for [defendant], the [NDCA] would seem equally inconvenient for [plaintiff]."). "[T]he court may consider undisputed facts outside of the pleadings such as affidavits or declarations but it must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *AGIS Software Dev. LLC v. Apple Inc.*, No. 2:17-CV-00516-JRG, 2018 WL 2721826, at *2 (E.D. Tex. June 6, 2018).

If the suit could have been brought in the proposed district, *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"), the Court should then consider the Fifth Circuit's private and public interest factors. *Id.* "[R]espect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to 'clearly demonstrate' that the proposed transferee forum is 'clearly more convenient' than the forum in which the case was filed." *Japan Display Inc. v. Tianma Microelectronics Co.*, No. 2:20-CV-00283-JRG, 2021 WL 3772425, at *2 (E.D. Tex. Aug. 25, 2021) (citing *Volkswagen I*, 371 F.3d at 203).

### C.    Rule 12(b)(6)

The question on a Rule 12(b)(6) motion to dismiss is not whether the plaintiff will prevail on its claims, "but whether [the] complaint was sufficient to cross the federal court's threshold." *Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 935 (E.D. Tex. 2016) (citing *Skinner v. Switzer*, 562 U.S. 521, 530 (2011)). The Court must "accept all well-pleaded facts in the complaint as true and view the facts in the light most favorable to the plaintiff." *O'Daniel v. Indus. Serv. Sols.*, 922 F.3d 299, 304 (5th Cir. 2019) (citation omitted). After viewing the facts most favorably to the plaintiff, "the court must then decide whether those facts state a claim for relief that is plausible on its face." *Script*, 170 F. Supp. 3d at 935 (citation omitted). The plausibility standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *Multimedia Techs. Pte. Ltd. v. LG Elecs. Inc.*, No. 2:22-cv-00494-JRG-RSP, 2024 WL 1340360, at *1 (E.D. Tex. Mar. 1, 2024). "[W]here the relevant information is beyond the access of the plaintiff, courts should generally permit discovery to proceed unless the complaint recites no more than sheer speculation about the plaintiff's entitlement to relief." *Motiva Pats., LLC v. Sony Corp.*, No. 9:18-cv-00180-JRG, 2019 WL 4737051, at *4 (E.D. Tex. Sept. 27, 2019).

In the Fifth Circuit, motions to dismiss "are viewed with disfavor and are rarely granted."

*Lormand v. US Unwired, Inc.,* 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted). In the context of patent infringement, a complaint must "place the alleged infringer on notice of what activity is being accused of infringement." *Lifetime Indus., Inc. v. Trim-Lok, Inc.,* 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quotation marks and alterations omitted). However, the plaintiff need not prove its case at the pleading stage. *Id.*

## IV.    ARGUMENT

### A.    Personal Jurisdiction Is Proper Over Defendants Seagate plc, Seagate International, and Seagate Netherlands[2]

#### 1.    Personal Jurisdiction Is Proper Over Defendants Under the Stream of Commerce Theory

The facts as pled in the Complaint demonstrate that this Court has specific jurisdiction over Defendants under the stream of commerce theory through Seagate's well-established manufacturing, importation, and sales channel into and throughout the United States, including Texas. MRL pled that the Defendants place their products into the stream of commerce, including through their webpage. Dkt. 1, ¶ 10.

Seagate admits that Seagate Thailand is responsible for the manufacture and assembly of the Accused Products and ███████████████████████████████████████ with the expectation that these products will be imported and sold throughout the United States, including Texas. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) ("The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."); *Icon Health &*

---

[2] As set forth by Defendants, Seagate Singapore and Seagate Thailand "are not challenging personal jurisdiction in this motion." Mot. at 8 n.2. Indeed, Defendants concede that ████████████████████ ███████████████████████████████████████████

*Fitness, Inc. v. Horizon Fitness, Inc.*, No. 5:08CV26, 2009 WL 1025467, at *12 (E.D. Tex. Mar. 26, 2000) (a defendant established sufficient contacts with the forum by "deliver[ing] its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."). Thus, by Defendants' own admission, the Defendants would certainly be aware that their products would reach Texas. *See AX Wireless LLC v. Lenovo Grp. Ltd.*, No. 2:22-cv-00280-RWS-RSP, 2023 WL 7105701, at *4 (E.D. Tex. Sept. 6, 2023).

The Defendants direct their activities to the United States and Texas through their established distribution channels. "This is not a case where a small manufacturer sells its products to an independent distributor, who then distributes the products to consumers across the nation. . . . Rather, 'acting in consort' with ASWO, Suunto deliberately and purposefully shipped the accused products to Delaware retailers." *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1351 (Fed. Cir. 2016). Defendants' "active participation in supplying and shipping the accused products to [Texas] thus constitutes purposeful availment," submitting them to this Court's jurisdiction. *Id.* Defendants' own Annual Report, filed by Seagate plc, states the products are provided to OEMs, distributors, and retailers, including in the United States and Texas, and "no doubt knew that its products would be sold across the United States and presumably in the State of Texas." *ACQIS LLC v. Lenovo Grp. Ltd.*, 572 F. Supp. 3d 291, 303 (W.D. Tex. 2021). While Defendants Seagate plc, Seagate International, and Seagate Netherlands attempt to distance themselves from Seagate Singapore, the Annual Report filed by Seagate plc on behalf of all the Seagate entities including the named Defendants, lists the principal office as 121 Woodlands Avenue 5, Singapore 739009, Singapore, the address of Seagate Technology International. *Compare* Ex. 3, at 1 *with* Ex. 4.

The holdings of *ACQIS* and *AX Wireless* are on point. In these cases, the Courts found that the parent company had clearly directed its activities towards the United States and Texas, where

LGL, as the head of the Lenovo Group, spent years establishing a supply chain over which it exerts controls to import and sell its products in the United States and Texas. *See ACQIS*, 572 F. Supp. 3d at 302; *AX Wireless*, 2023 WL 7105701, at *4. The Courts found that LGL and its subsidiaries present themselves as a "single global company," share executive and management teams to manufacture and distribute the products, share revenues from sales of the products, and conduct business through its website, allowing customers to purchase the products. *See ACQIS*, 572 F. Supp. 3d at 305; *AX Wireless*, 2023 WL 7105701, at *4.

Viewing the allegations as true and the factual conflicts in Plaintiff's favor, MRL has presented a *prima facie* case that (1) the Defendants purposefully manufacture, sell, market, and/or ship the Accused Products into the forum state through an established distribution channel, and (2) that the subject causes of action for patent infringement arises out of these activities. *See Beverly Hills*, 21 F.3d at 1565. Defendants do not dispute Seagate Singapore and Seagate Thailand, as well as their subsidiaries, affiliates, and intermediaries created an established distribution channel for the Accused Products to be placed into a stream of commerce into and throughout the United States, including Texas, and that the Defendants did place the Accused Products into that stream of commerce, and could foresee the Accused Products would be sold in Texas.

### a. Seagate plc Reports Revenues From its Subsidiaries Including U.S. Sales and Enters Into Contracts for Sale of Products in the United States

Defendant Seagate plc "enjoys revenues from sales of Accused Products by related entities." *AX Wireless*, 2023 WL 7105701, at *4. Seagate plc, the entity responsible for filing the Annual Report on behalf of each of the Defendants, discloses "our reportable business segment" and discloses consolidated business sheets, statements of operations, comprehensive income, cash flows, and financial statements. *See* Ex. 3, Annual Report at 50. Seagate plc also discloses revenue on a unitary basis on behalf of each of Seagate's subsidiaries, including Defendants. *Id.*, at 42.

This includes revenues by geography. *Id.* For example, Seagate plc reports that the revenues for the "Americas" for the fiscal year ending June 27, 2025 was 49%. *Id.* Seagate plc reports that OEMs account for 80%, distributors account for 12%, and retailers account for 8% of the revenue by channel. *Id.* This demonstrates that the Defendants represent Seagate as a single company to its customers that shares revenues, regardless of corporate formalities.

### b. Defendants Conducts Operations in the United States Through the Strategic Expansion of Seagate

Defendants have also made the conscious decision to expand their presence in the United States market. For example, Seagate most recently completed the acquisition of Intevac, Inc., a supplier of thin-film processing systems, a component of hard drives. Ex. 5, Seagate Completes Acquisition of Intevac; Ex. 6. Intevac was a company headquartered in Santa Clara, California, at the time of the acquisition. *Id.* "Upon completion of the merger, Intevac became a wholly owned subsidiary of Seagate" and "[s]hares of Intevac ceased trading prior to the open of the market . . . and will be delisted." Ex. 5. Thus, through this merger, Seagate has expanded its network of subsidiaries to establish an expansive manufacturing, supply, and distribution chain for its products. *See, e.g.*, *AX Wireless*, 2023 WL 7105701, at *4 ("AX Wireless presents evidence that LGL specifically targets the U.S. market through corporate expansion and statements from LGL's CEO regarding U.S. strategy.").

### 2. This Court Has Personal Jurisdiction Because Defendants Act in Consort with Seagate Subsidiaries as a Single Entity that Directs its Activities to the United States and Texas

Defendants are subject to personal jurisdiction in this Court because they, alone or "acting in consort" with the other named defendants, placed the Accused Products into the stream of commerce, "they knew the likely destination of the products, and their conduct and connections with [Texas] were such that they should reasonably have anticipated being brought into court

there." *Beverly Hills Fan*, 21 F.3d at 1566.

As shown below, Defendants' publicly-filed documents show they manage and direct the conduct of their subsidiaries and sister-entities. The network of Defendants and other Seagate subsidiaries ships the Accused Products into Texas through an established distribution channel; that conduct establishes jurisdiction in this Court. *Id.* at 1565. Defendants concede that they have established such a distribution channel. For example, Defendants contend that Seagate Singapore is "responsible for the distribution of the accused products to distributors, such as STL, which is the United States distributor of products including the accused products." Mot. at 4. Defendants contend that ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ *Id.* Defendants attempt to cast these activities as outside the direction and control of any other Seagate entities, but this is contradicted by Defendants' own public filings. The Defendants' corporate filings and websites do not distinguish between the various Seagate entities, but represent the information as from "Seagate." *See, e.g.*, Section II.C. There is, at minimum, an "open factual dispute" as to the degree to which Defendants direct and control their subsidiaries.

> **a.     Seagate's Public Filings Demonstrate Defendants Act as a Single Entity**

The Defendants are affiliated operating entities that work together with the other Seagate entities to form a global group. *See, e.g.*, Ex. 7 ("Seagate's impact is truly global. With a presence in over 30 countries and customers in nearly every corner of the world, we are uniquely positioned to connect people, businesses, and ideas across borders."). Seagate touts that it is a "leading provider of data storage technology and infrastructure solutions that enable enterprises and end

12

users to confidently store and unlock the value of their data." Ex. 3,  at 3. The Defendants act in concert with and under the control of Seagate plc to sell, offer for sale, import, use, distribute, market, and manufacture the Accused Products and other goods into the United States, including Texas and this Judicial District.

The public filings and disclosures indicate that the Defendants do not operate in the United States, where Seagate plc authors and files an annual report with the SEC disclosing itself as one company, and leaving no doubt as to its unitary nature. Indeed, Seagate discloses that "the terms 'we,' 'us,' 'Seagate,' 'the Company,' and 'our' refer to Seagate Technology Holdings public limited company ('plc'), an Irish public company, and its subsidiaries." *Id.* Through its 10-K Form, Seagate plc consistently treats itself and its "consolidated subsidiaries" as a single company. *Id*. These statements indicate that Seagate presents itself as a unitary company, whereby Seagate plc directs and controls the business objectives, including manufacturing and distribution.

**b.    Seagate's Webpage Presents a Single Company from which Seagate Customers in the United States and Texas Can Purchase the Seagate Accused Products**

Defendants conduct business with customers through seagate.com, which allows customers to purchase the Accused Products and obtain technical support. Dkt. 1, ¶ 10; *see AX Wireless*, 2023 WL 7105701, at *4; Exs. 8-9. Seagate does not distinguish which entity is responsible for any activity on its webpage, which simply refers to "Seagate." *See id*.

While Defendants contend that non-party STL is the party who owns and operates the webpage, this is incorrect. Indeed, the only reference to any U.S. entity is the exhibit cited to by Defendants. See Mot. at 9. There is no reference to Seagate Technology LLC throughout the webpages. A customer purchasing a product through the webpage would not understand that they are purchasing this product exclusively from STL, or any specific Seagate entity. Rather, they would understand they are purchasing the product from Seagate.

In *Polar Electo*, the Federal Circuit found that personal jurisdiction existed over Finnish company *Suunto Oy*, despite using a sister company to market and distribute products in the United States. 829 F.3d at 1350-51; *see also AX Wireless*, 2023 WL 7105701, at *3. This Court has stated that "a domestic distributor or manufacturer need not be a named defendant in the case for personal jurisdiction over the foreign defendant." *Id*.

At minimum, the use of the website evidences Defendants have purposely availed themselves of the United States and Texas over the internet and is therefore a basis for personal jurisdiction. *See Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786 (5th Cir. 2021) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997)). Under the *Zippo* framework, the seagate.com website falls under the category of an "interactive website" with a level of information exchange sufficient to establish personal jurisdiction. This is in accordance with MRL's Complaint. Dkt. 1, ¶ 10. Alternatively, Seagate directs customers to distributors or "trusted partners" to purchase products. See, e.g., Ex. 9. Visitors to the seagate.com website, including those in the State of Texas and this Judicial District, can purchase Seagate-branded products and contact Seagate for assistance with sales, technical support, and placing orders. MRL has shown that Defendants were involved in directing and controlling the distribution of Seagate products in the United States.

### 3. Specific Jurisdiction Is Appropriate Under an Agency or Alter Ego Theory

Alternatively, Defendants are alter egos of the other Seagate entities, including named Defendants Seagate Singapore and Seagate Thailand, and these Seagate subsidiaries act as agents of Seagate plc because, at a high level, Seagate plc owns these entities entirely and directs and controls them. *See, e.g.*, Ex. 10. For example, Seagate Netherlands discloses that it is a wholly-owned subsidiary of Seagate Singapore, and Seagate Singapore is a wholly-owned subsidiary of

14

Seagate International. *Id.* Seagate Thailand is also a wholly-owned subsidiary of Seagate International. *Id.*

There is sufficient basis to exercise personal jurisdiction over Defendants as the alter egos of STL. "[T]he alter ego test for . . . personal jurisdiction [] is less stringent than that for liability." *Stuart v. Spademan*, 772 F.2d 1185, 1198 n.12 (5th Cir. 1985). Courts consider multiple factors in the alter-ego analysis, including: (1) the amount of the subsidiary's stock owned by the parent corporation; (2) the existence of separate headquarters for each entity; (3) the sharing of common officers and directors; (4) the observance of corporate formalities; (5) the maintenance of separate accounting systems; (6) the parent's corporation's exercise of complete authority over the general policy of the subsidiary; and (7) the subsidiary's exercise of complete authority over its daily operations. *Brooks & Baker, L.L.C. v. Flambeau, Inc.*, No. 2:10-cv-146-TJW-CE, 2011 WL 4591905, at *13 (E.D. Tex. Sept. 30, 2011). Courts also consider whether: (8) daily operations of the companies are kept separate; (9) parties with whom the companies come into contact are apprised of the companies' separate identities; (10) the companies share officers, employees, or financing; (11) one company pays wages to the other company's employees; (12) the employees of one corporation render services on behalf of the other corporation; and (13) the companies file separate tax returns. *See Fundamental Innovation Sys. Int'l, LLC v. ZTE Corp.*, No. 3:17-cv-1827-N, 2018 WL 3330022, at *3 (N.D. Tex. Mar. 16, 2018). In sum, these factors weigh in favor of finding Defendants are alter egos of the various subsidiaries.

Defendants do not contend that they observe corporate formalities. Seagate plc submits that its principal executive offices are located in Singapore, the headquarters for Seagate Singapore. The corporate directors and officers of "Seagate Technology" are represented as though they represent Seagate, not necessarily a single entity. Defendants have not produced any "inter-

company agreements" or "governing documents" that Defendants contend govern each of these entities that maintain the alleged separateness of these entities. Defendants' Annual Report reports on the activities and financial reporting of *Seagate*, and does not separately file financial reports or figures for each of these entities.

The actions of the other named Defendants, as well as STL, are imputable to Seagate plc because they "purposefully avail[ed] itself of [this] forum by directing its agents or distributors to take action [here]." *See Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014). "This theory does not treat the parent and subsidiary as one entity, but rather attributes specific acts to the parent because of the parent's authorization of those acts." *Cephalon, Inc. v. Watson Pharms., Inc.,* 629 F. Supp. 2d 338, 348 (D. Del. 2009). The relevant inquiry is whether the agent/subsidiary "performs services that are 'sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.'" *Viskase Cos. v. World Pac. Int'l AG,* 710 F. Supp. 2d 754, 761 (N.D. Ill. 2010) (citation omitted). As shown, each of the Seagate entities plays a role within the Seagate company, without which Defendants would be unable to tout themselves as a global company, distribute its products worldwide, or derive revenue.

### 4. Exercising Specific Jurisdiction Over Defendants Is Reasonable and Fair

The facts, as alleged and discussed herein, demonstrate the exercise of personal jurisdiction over the Defendants would be reasonable and would not offend traditional notions of fair play and substantial justice. "To evaluate whether the exercise of personal jurisdiction is reasonable and fair, the Court weighs five factors: (1) the burden on the defendant; (2) the interests of the forum State; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in

obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering substantive social policies." *AX Wireless,* 2023 WL 7105701, at *5.

First, any burden on Defendants of defending in a foreign forum is mitigated by "progress in communications and transportation." *See id*. Second, the interests of the forum State, the plaintiff's interest in obtaining relief, and the interstate judicial system's interest in obtaining the most efficient resolution of controversies favors jurisdiction where "both Texas and the United States have an interest in enforcing federal patent laws and providing a forum for [plaintiff] to efficiently pursue and resolve its patent infringement claims. In addition, there is a co-pending case against Renesas Electronics and DENSO in this District, where the same patents are asserted. *See Monterey Rsch. LLC v. Renesas Elecs. Corp.*, No. 2:24-cv-00238 (E.D. Tex.); *MR Licensing LLC v. Renesas Elecs. Corp.*, No. 2:25-cv-00441-JRG (E.D. Tex.). The fifth factor, the shared interest of the several States in further substantive social policies, also supports jurisdiction "because Texas and the United States have an interest in discouraging patent infringement." *AX Wireless*, 2023 WL 7105701, at *5. The totality of factors weighs in favor of the exercise of personal jurisdiction over Defendants being reasonable.

### 5. Personal Jurisdiction Is Proper Under Rule 4(k)(2)

Personal jurisdiction over Defendants is alternatively proper under Rule 4(k)(2). "[I]f . . . the defendant contends that he cannot be sued in the forum state and refuses to identify any other [state] where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 12985 (Fed. Cir. 2009) (citation omitted). Rule 4(k)(2) states: "For a claim that arises under federal law, serving a summons . . . establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). "In analyzing Rule 4(k)(2), a court

must consider whether '(1) defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to the defendant's activities with the forum, and (3) assertion of personal jurisdiction is reasonable and fair." *AX Wireless*, 2023 WL 7105701, at *2 (citation omitted). In applying Rule 4(k)(2), the Court must consider whether the defendant has sufficient ties to the United States as a whole to satisfy constitutional due process concerns. *See World Tanker Carriers Corp. v. MV Ya Mawlaya*, 99 F.3d 717, 723 (5th Cir. 1996).

MRL's claims of patent infringement present a federal question and the Defendants have not asserted that they are subject to the jurisdiction of *any* U.S. forum. *See Synthes (U.S.A.)*, 563 F.3d at 1296. First, the Defendants purposefully directed their activities at residents of the forum. *See supra* Section IV. For example, David Mosley, the current Chief Executive Officer and Director of Seagate plc, hosted an "Investor and Analyst Event" on May 22, 2025 in New York City. *See* Ex. 11. Seagate specifically targets the United States and maintains a sales and marketing team for the United States, as part of Seagate's global strategy. *See supra* Section IV. Together, these deliberate contacts support a finding that the Defendants have purposefully availed themselves of the United States.

Second, MRL's claims of patent infringement arise out of the Defendants' activities in the United States, where Defendants have committed acts of direct and/or indirect infringement within the United States and Texas. This includes entering into contracts to sell goods within the United States and, therefore, they have significant contacts and a direct financial interest in U.S.-based activities. Indeed, Defendants specifically identify the United States as one of its major markets. *See* Ex. 3 at 81. MRL's claim of patent infringement arises directly out of Defendants' activities.

Lastly, MRL has shown that exercise of personal jurisdiction over Defendants would be fair and reasonable. *See supra* Section IV. As such, the Court should find that exercising personal

jurisdiction over Defendants under Rule 4(k)(2) is proper.

### 6.    In the Alternative, Jurisdictional Discovery Is Warranted

In the event the Court finds that facts in MRL's Complaint and motion papers are insufficient to established personal jurisdiction over the Defendants is proper, MRL respectfully requests the Court grant MRL the opportunity to conduct limited jurisdictional discovery. Jurisdictional discovery would further elucidate the connections and acts of the Defendants aimed towards the United States and Texas, as well as the interoperation and conduct of the Defendants and Seagate as a whole, to act in concert with one another. Plaintiff also expects that jurisdictional discovery will uncover the existence of additional, currently unnamed Seagate entities (particularly in Asia) that are involved in the design, development, sourcing, manufacturing, research, and importation of the Accused Products. "[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978). "[J]urisdictional discovery should only be denied where it is *impossible* that the discovery 'could . . . add[] any significant facts' that might bear on the jurisdictional determination." *Blitzsafe Texas LLC v. Mitsubishi Elec. Corp.*, No. 2:17-cv-00418-JRG, 2019 WL 2210686, at *3 (E.D. Tex. May 22, 2019) (citation omitted). Since evidence of jurisdictional facts is often largely or wholly in the possession of an adverse party, broad jurisdictional discovery also ensures that jurisdictional disputes will be 'fully and fairly' presented and decided." *Id.* (collecting cases).

The existence of additional evidence that would support jurisdiction include, but is not limited to, agreements between the Defendants and other Seagate entities, governing documents, sales contracts with OEMs, distributors, and retailers, and agreements with "Seagate partners." As shown, Seagate's Annual Report reveals that it "sell[s] our products to major OEMs, distributors and retailers." Ex. 3 at 9. OEM customers include "large hyperscale data center companies and

CSPs," and the retail channel "consists of our branded storage products sold to retailers either by us directly or by our distributors." *Id.* at 10. Discovery into the Defendants' direct sales in the United States, including (1) contracts Defendants have executed with OEMs, distributors, and retailers; and (2) invoices issued from OEMs, distributors, and retailers for the importation and sale of Seagate products, would further support jurisdiction.

### B.    Defendants Have Failed to Meet Their Significant Burden to Demonstrate that D. Minn. Is Clearly More Convenient for All Parties

Defendants' statement that "this District has no connection to this case" (Mot. at 1) is a perfect summary of its flawed approach to the transfer analysis. Defendants ignore the fact that the plaintiff is a Texas entity located in this District and has several other litigations pending in this District, summarily concluding that because *they* contend a lack of connection to this District, that "this case" therefore has no connection to this District. Defendants have failed to establish that transfer to the District of Minnesota is "clearly more convenient" for *all* parties and witnesses and that transfer would not merely shift the inconveniences from one party to another. *See Aloft Media, LLC v. Adobe Sys. Inc.*, No. 6:07-cv-355, 2008 WL 819956, at *2 (E.D. Tex. Mar. 25, 2008). Because Defendants' failure to specifically identify witnesses or sources of proof should be treated with skepticism, and the Motion should be denied.[3]

---

[3] Defendants Seagate plc, Seagate International, and Seagate Netherlands' allegations that these entities are merely "shadow part[ies]" are belied by MRL's allegations above regarding jurisdiction over these entities based on their active participation in the stream of commerce for Seagate products in the United States and the State of Texas. Likewise, Defendants' unsupported allegations that these entities were merely added to "prevent transfer" are incorrect in view of the jurisdictional facts. Mot. at 14. Defendants' request that the Court sever and stay the case against Seagate plc, Seagate International, and Seagate Netherlands in this District is a waste of the Court's and the parties' resources. *Id.* As shown, Defendants engage in the distribution and sale of products in the United States and severing and staying claims against these entities would merely result in duplicative claims and cases, regarding the same issues and the same Asserted Patents.

### 1.    The Private Interest Factors Weigh Against Transfer

#### a.    Relative Ease of Access to Sources of Proof Weighs Against Transfer

This factor weighs against transfer because Defendants fail to identify sources of proof with enough specificity to show relevance, because MRL's own sources of proof are located in this District, and because Defendants appear to be "double counting" the Seagate third-party entity's sources of proof in both this factor and the third-party sources of proof factor. In contrast, MRL's relevant sources of proof and those of third parties are maintained in this District. MRL is a Texas LLC,[4] which maintains its documents, including the Asserted Patents and their File Histories, relevant agreements related to the assignment and sale of the Asserted Patents, and the like in its Marshall office. *See supra* Section II.B. Defendants simply ignore MRL's sources of proof in this District and instead rely on generic descriptions of documents and records to allege D. Minn. is more convenient. This type of showing fails to satisfy the heavy burden Defendants' own to demonstrate that a transfer to D. Minn. would be clearly more convenient for all the parties and witnesses. Through the Feist Declaration, Defendants submit that "Seagate Technology has documents related to the development of HDDs and SSDs" and "the majority of documents and records relevant to Seagate Technology's HDDs and SSDs are located in Minnesota." Dkt. 22-2 ¶ 20. But Seagate Technologies[5] is not a party, and the reliance on such unspecified documents is insufficient.

---

[4] Defendants' unsupported allegations that MRL engaged in venue manipulation is speculative and unsupported. *See AGIS v. Apple*, 2018 WL 2721826, at *3 (the Court stating that it is defendant's burden to demonstrate ephemerality of an entity); *id.* at *3 n.2 ("[W]hen you make an affirmative assertion that an entity is ephemeral, you have a burden to prove that.").

[5] This statement may be a reference to the fact that Seagate plc, the ultimate parent company, has possession, custody, and control of the documents of its subsidiaries, including the unnamed party STL. However, Defendants have not affirmatively stated as such and, therefore, MRL treats STL's documents as third-party documents.

First, Defendants fail to identify their own alleged sources of proof with enough specificity to demonstrate their relevance for transfer. This Court has held that general statements "fail to show that transfer would make access to sources of proof more or less convenient for the parties." *Core Wireless*, 2013 WL 682849, at *3 (defendant's statement that "virtually all [defendant's] business documents and records relating to the research, design, development, marketing strategy, and product revenue related to the Accused Products are located in or near Cupertino" was too vague to factor in the transfer analysis), *aff'd In re Apple Inc*., 743 F.3d 1377, 1379 (Fed Cir. 2014). Defendants' assertions about unidentified sources of proof are almost identical to those made by the defendant in *Core Wireless* which this Court rejected. *J2 Glob. Commc'ns Inc. v. Protus IP Sols., Inc.*, No. 6:08-CV-211, 2009 WL 440525, at *2 (E.D. Tex. Feb. 20, 2009) ("A movant must identify sources of proof with enough specificity that a court can determine whether transfer will increase the convenience of the parties.").

Without any specificity as to what the documents are and who maintains them, Defendants have submitted that these documents are "concentrated" in D. Minn. Mot. at 19. While Defendants contend that various categories of documents are located in D. Minn., the statements from the Feist Declaration that they purport to rely on does not disclose this information. *See* Dkt. 22-2, ¶ 20. Indeed, the Feist Declaration discloses that "many of its documents and records" are located in D. Minn. However, Seagate also maintains locations in California and Colorado. Indeed, Seagate's Annual Report discloses that Seagate also maintains product development facilities in California and Colorado, which are also used for "marketing and administrative and operational offices" and "administrative and operational offices," respectively. Ex. 3 at 37. The Minnesota facility is listed only for "manufacture of recording heads and product development." *Id.* Rather, the Thailand facilities are listed for the manufacture of "drives and drive subassemblies." *Id.* Further, the R&D

Centers are located in Northern Ireland, Singapore, Thailand, California, Colorado, *and* Minnesota. *Id.* at 11. These submissions to the SEC and the public plainly contradict Defendants' allegations that all the relevant evidence is located in D. Minn. Defendants have therefore not met their burden to show that this factor clearly favors transfer.

> **b.    The Cost of Attendance of Willing Witnesses Weighs Against Transfer**

This District is more convenient for MRL and willing non-party witnesses. Mr. O'Brien, who is an employee of MRL and the head of MRL's licensing activities. MRL, is located in San Antonio and Dallas, Texas, which is significantly closer to this District than D. Minn. Mr. O'Brien also travels to the MRL office in Marshall to perform his duties. Mr. Scahill, the Manager of MRL, is located in New York. Both individuals have expressed that this District is more convenient than D. Minn. *See supra* Ex. 1, ¶ 10; Ex. 2, ¶ 8.

MRL has a place of business in this District, which significantly decreases the cost of attendance for its witnesses. Mr. O'Brien, MRL's employee, lives in Texas and travels to this District regularly. The cost of a trial in this District to MRL is minimal, because Mr. O'Brien and MRL's other witnesses could work out of MRL's offices at the Marshall Technology Center during trial, while traveling to Minnesota for trial would significantly increase costs due to flights, hotels, and expensive trial space. In addition, Mr. Misiag of Monterey Research, has knowledge regarding Monterey, the prior assignee of the Asserted Patents. *Monterey Rsch., LLC v. Renesas Elecs. Corp.*, No. 2:24-cv-00238-JRG, Dkt. 50 at 6 (E.D. Tex. Oct. 24, 2024). (Mr. Misiag is located in Oklahoma, which is significantly closer to EDTX. *Id.* Mr. Giundi of IPValue, has knowledge regarding pre-suit licensing discussions with Defendants and other third-parties. *Id.* Mr. Giundi is located in Harriman, Tennessee, which is closer to EDTX than D. Minn. *Id.*

While Defendants identify and rely on witnesses located exclusively in the proposed transferee district, by Defendants' own admissions, Seagate Singapore and Seagate Thailand are relevant to this inquiry, because they are responsible for the manufacture and distribution of the Accused Products. Defendants disregard these entities entirely in their transfer analysis, and do not mention whether traveling to Texas vs. Minnesota would increase any of the foreign witnesses costs or other convenience factors. There is currently no evidence in the record that any third-party witnesses are willing.

### c.    Compulsory Process Over Non-Party Witnesses Does Not Weigh in Favor of Transfer

Defendants submit that STL's current and former employees are also considered under this factor. Mot. at 18. However, "[t]hese factors do not permit a single source of proof or witness to be 'double counted' or unduly influence the analysis." *AGIS Software Dev. LLC v. Huawei Device USA, Inc.*, No. 2:17-CV-00513-JRG, 2018 WL 2329752, at *3 (E.D. Tex. May 23, 2018) (citing *Peteski Prods., Inc. v. Rothman*, No. 5:17-cv-00122-JRG, 2017 WL 8943154, at *3 (E.D. Tex. Nov. 13, 2017) (excluding willing third-party witnesses and party witnesses (presumed to be willing) from consideration under the compulsory process factor). Accordingly, any STL witnesses should be considered under the willing witness factor, not this factor.

Defendants' contend that any prior owners of the Asserted Patents and inventors are not located in this District. However, Defendants do not submit that these individuals are subject to subpoena in D. Minn. *See Monarch Networking Sols., LLC v. Cisco Sys., Inc.*, No. 2:20-cv-00015-JRG, Dkt. 141 at 15 (E.D. Tex. Jan. 15, 2021) (finding the weight of this factor "greatly diminish[ed]" where most third-parties, including prior artists and inventors, were not subject to subpoena in either district).

The prior owner of the Asserted Patents, Monterey Research, already signed dozens of

license agreements that cover the Asserted Patents. As one example, it previously filed and resolved *Monterey Rsch. LLC v. Toshiba Am. Elec. Components, Inc.*, No. 6:23-cv-00340, Dkt. 1 (W.D. Tex. May 9, 2023). *See also id.*, Dkt. 33 (W.D. Tex. Feb. 14, 2024). Both Defendant Toshiba entities had a place of business in Austin, Texas (Dkt. 1 ¶ 8) and, therefore, can be served with a trial subpoena in Texas, which has state-wide subpoena power and which is located closer to the courthouse in Marshall than in Minnesota. Fed. R. Civ. P. 45(c)(3)(B)(iii) and 45(c)(3)(C) (a court has power to compel trial testimony if the witness is served: (1) within the district; (2) within 100 miles of the courthouse; or (3) within the state of the issuing court).

Monterey Research has also entered into license agreements with the following entities, all of which have places of business in Texas: ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ These entities likely have witnesses knowledgeable about those prior license agreements which, among other things, may be relevant to the damages case and the *Georgia-Pacific* factors.

Accordingly, this factor weighs strongly against transfer.

### d.   All Other Practical Problems Weigh Heavily Against Transfer

"Practical problems include those that are rationally based on judicial economy." *Quest NetTech Corp. v. Apple Inc.*, No. 2:19-CV-00118-JRG, 2019 WL 6344267, at *6 (E.D. Tex. Nov.

27, 2019). Defendants contend that this factor *favors* transfer because this case is in the early stages. However, there are no concerns regarding judicial economy here. At best, this factor is neutral.

### 2.    Public Factors Do Not Weigh in Favor of Transfer

#### a.    Court Congestion Weighs Against Transfer

The District of Minnesota is far more congested than EDTX, considering average time to trial and time to resolution. For example, the media time to a jury trial in the D. Minn. is 59.7 months and media time to mature termination is 28.3 months, compared to 27.9 months for jury trial and 20.1 months to mature termination in this District. Exs. 21-22. Even considering the Federal Judicial Caseload Statistics for Median Time Intervals from Filing to Disposition of Civil Cases Terminated for the 12-month period ending June 30, 2025, the median time interval in months for total cases in Minnesota is 8.7 months, in comparison to 7.1 months in the EDTX. Ex. 23. Considering Court congestion and the "time expended here [that] could not be easily recaptured" if this case were transferred, this factor weighs heavily against transfer. *See Realtime Adaptive Streaming, LLC v. Amazon.com, Inc.*, No. 6:17-CV-00549-JRG, 2018 WL 4444097, at *7 (E.D. Tex. Sept. 5, 2018); *In re Chamber of Commerce of the U.S. of Am.*, 105 F. 4th 297, 309 (5th Cir. 2024) (holding that "the district court can ably access the demands of its own docket," including by considering time to resolution in assessing "the administrative difficulties flowing from court congestion").

Defendants do not even attempt to assess this factor, disregarding any differences in the caseloads of either District as having "little weight" and "no practical impact to MRL." Mot. at 22. To the contrary, this Court has held that "this factor alone cannot dictate the disposition of Defendant's motion, but this factor is considered when weighing all factors together." . *Slyde Analytics, LLC v. Zepp Health Corp.*, No. 2:23-cv-00172-RWS-RSP, 2024 WL 3927228, at *4

(E.D. Tex. Aug. 22, 2024). Accordingly, this factor is properly considered here, where the other factors weigh against transfer or are neutral.

### b. The Local Interest in Having Localized Interests Decided at Home

This District has a local interest in this dispute because MRL is a Texas entity with an office in Marshall, Texas, and all its documents and records are located at that office. Defendants contend MRL's connections should be disregarded because of its "recent formation" but as noted, this Court has rejected similar arguments that plaintiff's sources of proof should be ignored without "concrete evidence that the business is actually a sham and has no real operations." *AGIS v. Apple*, 2018 WL 2721826 at *3. MRL was formed and began to operate in Marshall, Texas in December, 2024 nearly a year ago. See Ex. 24. MRL has had an office in Marshall since that date. MRL's business is licensing, and merely the fact it is a year old company does not make the plaintiff ephemeral. Defendants have not provided any evidence to support its allegations. Mot. at 22.

Defendants' reliance on STL's activities are insufficient. Defendants admits that manufacture and assembly of these products does not occur in Minnesota, and the Annual Report reveals that relevant activities occurring in research and development activities occur in Northern Ireland, Singapore, Thailand, and the U.S. Ex. 3, at 11.

This District has a particularized local interest which weighs against transfer.

### c. The Remaining Public Interest Factors Do Not Weigh in Favor of Transfer

Defendants concede that the remaining factors are neutral. Mot. at 23.

### C. MRL's Infringement Claims Should Not Be Dismissed

Defendants' conclusory allegations regarding MRL's infringement allegations should be rejected. MRL has plausibly alleged the Defendants directly infringe the Asserted Patents and therefore, the Motion should be denied. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350

27

(Fed. Cir. 2018) ("The 'purpose of a motion to dismiss is to *test the sufficiency of the complaint, not to decide the merits.*'"). The sum of Defendants' argument is because MRL has identified the "Defendants" for its allegations of infringement, it did not plausibly allege infringement. But the same argument was addressed by this Court in *AX Wireless* and denied. 2023 WL 7105701, at *5.

MRL states a plausible claim for direct infringement against the Defendants. "To state a claim for patent infringement, the plaintiff must allege that an entity 'without authority makes, uses, offers to sell, or sells any patented invention, with[in] the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.'" *Id.* For example, MRL's Complaint states: "Defendants directly place their products into the stream of commerce in the Eastern District of Texas by allowing customers to purchase the products from their website." Dkt. 1, ¶ 10. The Complaint further states:

> Defendants have and continue to directly infringe the '041 Patent, either literally or under the doctrine of equivalents, without authority an in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '041 Patent. Upon information and belief, the Accused Products practice the methods and systems covered by the '041 Patent.

*Id.*, ¶ 34. MRL's Complaint explains in detail how the Accused Products infringe the Asserted patents on an element-by-element basis. *See generally*, Dkt. 1. Based on these allegations, MRL has articulated the standard for patent infringement and provided Defendants with proper notice of its claim. *See AX Wireless*, 2023 WL 7105701, at *5. MRL has sufficiently pled its claims for infringement of the systems claims by Defendants through the sale and importation of the Accused Products and the Motion should be denied. *See Tarkus Imaging, Inc. v. Adobe Sys., Inc.*, No. 10-63-LPS, 2011 WL 1557930, at *2-*3 (D. Del. Apr. 21, 2011).

MRL has alleged facts regarding the Defendants control and participation in the importation and sale of the Accused Products. *See, e.g.*, Dkt. 1, ¶ 10. And MRL has alleged the

relationship between the named defendants and that these entities act in concert to place the Accused Products into the stream of commerce. *See supra* Section III. MRL's direct infringement claims are therefore sufficiently pled.

Similarly, MRL has sufficient pled facts to support its claims for indirect infringement. Defendants argue that because MRL's direct infringement claims, "necessarily fail," Mot. at 27, its indirect infringement claims also fail. As shown, MRL's direct infringement claims are sufficient. MRL's allegations of indirect infringement are also sufficient under the case law in this District. MRL has alleged in the Complaint that Defendants indirectly infringe by "actively inducing others to make, use, sell, offer to sell, and/or import the Accused Products." Dkt. 1, ¶ 22. The Complaint further alleges, for example, that:

> Defendants have and continue to indirectly infringe one or more claims of the '041 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '041 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '041 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendants to be specially made or adapted for use in the infringement of the '041 Patent. Defendants perform these affirmative acts with knowledge of the '041 Patent and with intent, or willful blindness, that they cause the direct infringement of the '041 Patent.

*Id.*, ¶ 47; *see also id.*, ¶¶ 63, 64, 77, 78, 90, 91, 107, 108, 123, 124. Such allegations have been found sufficient to maintain claims for indirect infringement. *See, e.g., In re Taasera Licensing LLC, Pat. Litig.*, No. 2:22-MD-03042-JRG, 2023 WL 2716540 (E.D. Tex. Mar. 29, 2023). In *Taasera*, this Court found allegations that the defendant "with knowledge of these products, or the use thereof, . . . infringe the [] Patent . . ., knowingly and intentionally induced . . ., direct

29

infringement of the [] Patent by providing these products to end-users for use in an infringing manner[]" was sufficient to state a claim for induced infringement. *Compare id.* at *6 (internal quotations omitted) *with* Dkt. 1, ¶¶ 47, 63, 64, 77, 78, 90, 91, 107, 108, 123, 124. This Court in *Taasera* further took note the plaintiff's amended complaint alleged induced infringement by "providing these products to end-users for use in an infringing manner, (2) providing instruction and installation manuals on their support portal; and (3) providing customer service through phone support and/or dedicated support staff that instruct end-users to use the products in an infringing manner." *Compare id.* (internal quotations omitted) *with* Complaint, ¶¶ 47, 63, 64, 77, 78, 90, 91, 107, 108, 123, 124. MRL has made similar allegations to those in the amended complaint in *Taasera*, which this Court found to be sufficient. *Id.* (citing *RightQuestion, LLC v. Samsung Elecs. Co.*, No. 2:21-CV-00238-JRG, 2022 WL 507487, at *3 (E.D. Tex. Feb. 18, 2022)); *see also Titanide Ventures, LLC v. Int'l Bus. Machs. Corp.*, No. 4:12-CV-196, 2010 WL 5507327, at *4 (E.D. Tex. Oct. 18, 2012) ("Furthermore, the Supreme Court has held that a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss. . . . That facts alleged must simply 'raise a reasonable expectation that discovery will reveal' the proof required."). The Complaint sufficiently pleads indirect infringement, and the Motion should be denied.

While MRL maintains it has sufficient and plausibly alleged infringement, to the extent the Court is not satisfied with MRL allegations in the Complaint, MRL respectfully requests leave to file an amended complaint. *See SGK Props., L.L.C. v. U.S. Bank Nat'l Ass'n for Lehman Bros. Small Balance Com. Mortg. Pass-Through Certificates, Series 2007-3*, 881 F.3d 933, 944 (5th Cir. 2018), *cert. denied sub nom. SGK Props. L.L.C. v. U.S. Bank Nat. Ass'n,* 139 S. Ct. 274 (2018).

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss and Transfer (Dkt. 22).

Dated:  October 9, 2025

Respectfully submitted,

*/s/ Alfred R. Fabricant*
Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@fabricantllp.com
Joseph M. Mercadante
NY Bar No. 478493
Email: jmercadante@fabricantllp.com
Enrique W. Iturralde
NY Bar No. 552628
Email: eiturralde@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

William E. Davis, III
Texas Bar No. 24047416
Email: bdavis@davisfirm.com
Rudolph "Rudy" Fink IV
Texas Bar No. 24082997
Email: rfink@davisfirm.com
Ty Wilson
Texas Bar No. 24106583
Email: twilson@davisfirm.com
**THE DAVIS FIRM, PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

***ATTORNEYS FOR PLAINTIFF***
***MR LICENSING LLC***



███████████ _____
Alfred R. Fabricant

**CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2025, a true and correct copy of the above and foregoing document has been served by email on all counsel of record.

*/s/ Alfred R. Fabricant*
Alfred R. Fabricant